945 P.2d 376

**STATE of Arizona, Appellee,**

**v.**

**David Patrick RAMIREZ, Appellant.**

**No. 1 CA–CR 96–0290.**

Court of Appeals of Arizona, Division 1, Department A.

July 29, 1997.

Review Granted Oct. 21, 1997.

Review Dismissed as Improvidently Granted Feb. 6, 1998.

Grant Woods, Arizona Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, Joseph T. Maziarz, Assistant Attorney General, Phoenix, for Appellee.

Maricopa County Public Defender by Stephen R. Collins, Deputy Public Defender, Phoenix, for Appellant.

## OPINION

NOYES, Presiding Judge.

The jury found Appellant guilty of first degree murder. His defense was that he had acted without premeditation and was therefore guilty of the lesser offense of second degree murder. Because the jury instruction and the State's final argument erroneously implied that premeditation was an instant of time rather than actual reflection, we reverse and remand for new trial.

### I.

A young man named David knocked on the door of Appellant's girlfriend's townhouse. Appellant opened the door and greeted David with an aggressive handshake, as if trying to overpower him. The two struggled for a moment, then quit. As they walked into the house, Appellant pressed a gun into David's ribs and said, "I could have took you out already." Nothing more happened between them.

About a month later, Appellant walked out of the townhouse and saw David's brother walking towards him. David and his brother looked alike. Appellant went up to the brother and shook hands with him, and greeted him, and then, for no apparent reason, pulled out a gun and shot him three times, killing him. Appellant paused between the second and third shots. There were several witnesses. As Appellant walked away, he pointed the gun at a girl and said, "Later, Vicki." Appellant said to one witness: "He started it. He deserves it." (The victim had done nothing.) Appellant said to another witness: "He showed me a gun. I gave him a bullet." (The victim had no gun.) By some accounts, Appellant appeared to be under the influence of alcohol and methamphetamine at the time. By all accounts, it was a senseless killing. Whether it was also a premeditated killing was the only contested issue in the trial.

The jury found Appellant guilty of first degree murder. When sentencing Appellant to life in prison (with possible release in 25 years), the trial court stated that, "While all murders are senseless this one appears to the Court to have been particularly senseless in that the defendant didn't even know the victim. The defendant ... impulsively and for no reason pulled out a gun and shot this person."

We have jurisdiction of the appeal pursuant to the Arizona Constitution, article 6, section 9, and Arizona Revised Statutes Annotated ("A.R.S.") sections 12–120.21(A)(1) (1992), 13–4031 (1989), and 13–4033(A) (Supp. 1996).

### II.

■ Appellant claims that the jury instruction on premeditation "lessened the State's burden of proving premeditation." We agree. The State claims that the instruction was correct and that Appellant waived any objection by requesting the language about which he complains. We find no waiver. Appellant made numerous efforts to have the jury correctly instructed on premeditation.

To discuss premeditation requires quotation from many sources. The statutory definition is in A.R.S. section 13–1101(1) (1978), which provides:

> "Premeditation" means that the defendant acts with either the intention or the knowledge that he will kill another human being, when such intention or knowledge precedes the killing by a length of time to permit reflection. An act is not done with premeditation if it is the instant effect of a sudden quarrel or heat of passion.

The statute's last sentence, which we will call the "instant effect" sentence, was not given in this case although it was contained as an option in the State's requested instruction, Recommended Arizona Criminal Jury Instruction ("RAJI") 11.051, which provides:

> "Premeditation" means that the defendant's intention or knowledge existed before the killing long enough to permit reflection. However, the reflection differs from the intent or knowledge that conduct will cause death. It may be as instantaneous as successive thoughts in the mind, and it may be proven by circumstantial evidence. [It is this period of reflection, regardless of its length, which distinguishes first degree murder from intentional or knowing second degree murder.] [An act is not done with premeditation if it is the instant effect of a sudden quarrel or heat of passion.]

The "instantaneous as successive thoughts" language in the RAJI instruction is not in the statute; it perhaps came from *Moore v. State*, 65 Ariz. 70, 75, 174 P.2d 282, 285 (1946), which stated that, "It is said that the deliberation and premeditation may be as instantaneous as successive thoughts of the mind." Unfortunately, it seems to have been forgotten that *Moore* also cautioned that, "[W]hile the jury may be told that the brain can function rapidly they must not be misled into thinking that an act can at the same time be ... impulsive, unstudied and premeditated." *Id.* at 82, 174 P.2d at 290. The jury was so misled in Appellant's case. The court's instruction, as mis-argued by the State, essentially told the jury that an act could be both impulsive and premeditated.

The instruction given in Appellant's case was as follows:

> "Premeditation" means the defendant's knowledge that he will kill another person existed before the killing long enough to permit reflection. However, the time for reflection must be longer than the time required merely to form the knowledge that conduct will cause death. It may be as instantaneous as successive thoughts in the mind, and it may be proven by circumstantial evidence.
>
> It is this period of reflection, regardless of its length, which distinguishes first degree murder from second degree murder.

This instruction contains two ambiguities which turned into errors when the State mis-argued the law, over objection of Appellant: First, by failing to be clear that premeditation requires actual reflection, the instruction allowed the State to argue that premeditation is just a period of time. Second, because the instruction commented that this period of time can be "instantaneous as successive thoughts in the mind" but provided no balancing language to the effect that an act cannot be both impulsive and premeditated, it allowed the State to argue, in effect, that premeditation is just an instant of time. The State's rebuttal argument on this critical matter of law was as follows:

> MR. RUIZ: ... I submit to you that you will receive an instruction on what premeditation means, and that instruction is pretty clear. It doesn't talk about planning. It doesn't talk about a lot of things that were mentioned by the defense. It talks about a sufficient period of time to permit reflection. It doesn't even go on to say, hey, you have to reflect.
>
> MR. TERRIBILE: Objection, Your Honor. That's a misstatement of the law.
>
> MR. RUIZ: That's what the instruction says, Judge.
>
> THE COURT: The objection is overruled. The instructions will be read to the jury, and they're to take the instructions as the law, not the lawyers' characterizations of them.
>
> MR. RUIZ: It says a sufficient period of time to permit reflection and that this period of time must be longer than the amount

of time that it would take to form the knowledge that you're going to commit a murder or commit a killing.

. . . .

The instruction says it can be as instantaneous as two thoughts in the mind.

After the arguments, Appellant once again objected to the errors in the State's argument and the court's instruction:

MR. TERRIBILE: Yes. At this time I make a motion for a mistrial. The State took advantage of the instructions and argued to that jury he doesn't have to reflect, just needs the time to reflect, and I think that's an error. I think it was invited by the instructions.

I would ask the Court to grant me a mistrial or send in an instruction that says that it's not enough to have time to reflect. The defendant actually has to take advantage of the time and engage in reflection. THE COURT: The motion for mistrial is denied.

On appeal, Appellant relies on *State v. Guerra*, 161 Ariz. 289, 778 P.2d 1185 (1989) and *State v. Eastlack*, 180 Ariz. 243, 883 P.2d 999 (1994), *cert. denied*, 514 U.S. 1118, 115 S.Ct. 1978, 131 L.Ed.2d 866 (1995). The instructions in these two cases were no models; the one in *Guerra* stated:

The time for reflection need not be prolonged and there need be no appreciable space of time between the intention to kill unlawfully and the act of killing.

It may be as instantaneous as the successive thoughts of the human mind, however it must be longer than the time required to form the intent or knowledge that such conduct will cause death.

An act is not done with premeditation if it is the instant effect of a sudden quarrel or heat of passion.

*Guerra*, 161 Ariz. at 293–94, 778 P.2d at 1189–90.

Stating that it had "problems" with this instruction, the supreme court found that the "no appreciable space of time" language could mislead a jury by "placing undue emphasis on the rapidity with which premeditation can occur." *Id.* at 294, 778 P.2d at 1190. The Court stated, "We believe a jury may be misled by an instruction placing undue emphasis on the rapidity with which premeditation can occur." *Id.* The Court found, however, that reversal was not required because "the remaining portions of the instructions clarified the definition of premeditation." *Id.* In other words, the conviction was saved by the "instant effect" language which was missing from the instruction in Appellant's case. The instruction in *Eastlack* was similarly flawed but it, too, was salvaged by the "instant effect" language missing in this case. *Eastlack*, 180 Ariz. at 259, 883 P.2d at 1015.

We note that the supreme court, in *State v. Amarillas*, 141 Ariz. 620, 623, 688 P.2d 628, 631 (1984), advised that the statutory "instant effect" sentence should not be given unless there is "evidence from which the jury could have found that the killing was manslaughter." No such evidence exists in Appellant's case. *Amarillas* does not mean, however, that a jury can be misled into believing that an act can be both impulsive and premeditated; *Amarillas* should not be construed as precluding a jury instruction which is balanced in its discussion of the time factor.

A frequently-cited source of the problematic "instantaneous as successive thoughts" language is *State v. Eisenstein*, 72 Ariz. 320, 332–33, 235 P.2d 1011, 1019–20 (1951), *overruled on other grounds by State v. Hunter*, 136 Ariz. 45, 664 P.2d 195 (1983). In *Eisenstein*, the supreme court reviewed an instruction which stated that, "The verb 'premeditate' means 'To think on, and revolve in the mind, beforehand; to contrive and design previously.'" *Id.* at 333, 235 P.2d at 1019. In *approving* this instruction (which also contained a definition of "deliberate" we omit because that word is not in the current statute), the court stated:

It is claimed that the instruction, as given, is not in harmony and is contrary to the holding of this court in *Moore v. State*, 65 Ariz. 70 [82], 174 P.2d 282, 290. [The first source of "instantaneous as successive thoughts."] In the latter case, the court was considering the effect of an instruction which emphasized that thoughts may follow each other with great rapidity and that

cold, calculated judgment may be arrived at quickly. With reference to such an instruction, we said: *"But if they are instructed in that vein, which emphasizes the rapidity with which thoughts may follow each other, fairness requires a further instruction placing at least equal emphasis on the true (see definitions above) meaning of the terms. In other words, while the jury may be told that the brain can function rapidly they must not be misled into thinking that an act can at the same time be ... impulsive, unstudied and premeditated. The extent of the reflection in every case, if it is to pass the test, must fairly and reasonably meet the ordinary and unquestioned significations of the test words."*

*Id.* at 333, 235 P.2d at 1019–20 (quoting from *Moore*, 65 Ariz. at 82, 174 P.2d at 290) (emphasis supplied). We agree with and reiterate this sound advice.

■ The State argues that the instruction and the prosecutor were correct in Appellant's case; that premeditation is, in fact, a period of time rather than actual reflection. The State acknowledges that, "prior to the Legislature's revision of the criminal code in 1978 *actual reflection* was required to prove premeditation." The State argues, however, that actual reflection was not required after the 1978 enactment of A.R.S. section 13–1101(1). "The statutory language is clear and unambiguous," argues the State, " 'actual reflection' is *not* required, only 'a length of time *to permit* reflection.' "

Here is the problem with the State's interpretation of the statute: Defining premeditation as a length of time (which can be instantaneous as successive thoughts in the mind) obliterates any meaningful difference between first and second degree murder—other than the penalties. The legislature has not merged these two offenses; it has prescribed different elements and different penalties for them. The minimum sentence for first degree murder is life in prison with possible release in twenty-five years; the maximum is the death penalty. *See* A.R.S. § 13–703 (1989). The minimum sentence for second degree murder is ten years in prison; the maximum is twenty-two years. *See*

A.R.S. § 13–710 (1989). This significant difference in penalty ranges strongly suggests that the legislature intended there to be an equally significant difference between first and second degree murder; something with more relevance to criminal responsibility than an instant of time.

In Appellant's case, as in many, the only difference between first and second degree murder was the element of premeditation. *Compare* A.R.S. § 13–1104 (1989) with § 13–1105 (1989). In this case, as in most, after defendant formed the knowledge that he would kill he could not possibly pull the gun, and aim it, and pull the trigger faster than he could form a successive thought in his mind. Therefore, if the State's argument prevails, any murder is premeditated—at the whim of the State—unless defendant acted faster than he could have a second thought. In real life, of course, many persons act without thinking twice, even when they have time to do so. But the State's definition of premeditation would include those unreflecting killers in the first degree murder category, along with those who actually reflected before acting. We conclude that the first degree murder statute has never been aimed at those who had time to reflect but did not; it has always has been aimed at those who actually reflected—and then murdered.

If the difference between first and second degree murder is to be maintained, premeditation has to be understood as reflection. It is fair to talk of the period of time in which reflection might occur; but it is not fair to *define* reflection as the period of time in which it might occur. To have meaning, the element of premeditation must describe something that defendant actually does. Just as murder requires actual killing, premeditation requires actual reflection. Premeditation can, of course, be proven by circumstantial evidence; like knowledge or intention, it rarely can be proven by any other means. The more time defendant has to reflect, the stronger the inference that he actually did reflect. This is what the statute is getting at—that actual reflection can be inferred from the length of time to permit reflection. That is the way it has always been and nothing we say here changes

that. What we reject, however, is the notion that premeditation is just an instant of time.

Other than misconstruing the statute, the State offers no support for its argument that premeditation changed from actual reflection to a period of time with the enactment of section 13–1101(1). We find no indication that the legislature intended the statute to work such a significant change in the law, and the legislative history suggests otherwise. For example, the Majority Analyst Summary for H.B.2054, as introduced, 33rd Leg., 1st Reg. Sess., (Ariz.1977) (on file with the Chief Clerk of the House of Representatives), advised lawmakers as follows:

> The homicide statutes have been conformed to existing law in much of the language used, however, the basic plan of the Commission, which established four kinds of homicide, has been retained. The result is a simplified and clarified law which does not, however, depart significantly from present case law.

We agree that the 1978 definition of premeditation did not "depart significantly from present case law." For nearly twenty years now, the supreme court cases have regarded this statute as not making a significant change in the meaning of premeditation. Both before and after 1978, the supreme court cases define premeditation as requiring actual reflection. We discuss a few of the cases.

Under the pre–1978 code, the supreme court upheld the following jury instruction on premeditation: "In order to find a deliberate and premeditated killing you must find more reflection on the part of the defendant than is involved in the mere formation of the specific intent to kill." *State v. Magby,* 113 Ariz. 345, 352, 554 P.2d 1272, 1279 (1976).

After enactment of the 1978 code, *State v. Walton,* 133 Ariz. 282, 290, 650 P.2d 1264, 1272 (App.1982), observed that, "In light of the definition of premeditation in the current criminal code, it is apparent that *State v. Magby* has continuing utility, and thus, it is this period of reflection, regardless of the length of time of the reflection, which distinguishes first degree murder from intentional or knowing second degree murder."

In *State v. Ortiz,* 158 Ariz. 528, 533, 764 P.2d 13, 18 (1988), the supreme court agreed with the following supplemental definition of "reflection":

> The definition of "reflection" which would apply here is a thought, idea or opinion formed as a result of deliberation or serious consideration. However, you are cautioned that "reflection" as used in the instruction on first-degree murder means a mental process which is longer and more serious than merely needed to form intention.

In *State v. Willoughby,* 181 Ariz. 530, 540, 892 P.2d 1319, 1329 (1995), the court stated that, "Premeditation being 'part of the corpus delicti' of premeditated first-degree murder, [*State v.*] *Poland,* 132 Ariz. [269] at 276, 645 P.2d [784] at 791 [ (1982) ], and the verdict having established that actual premeditation occurred, there was no question but that it occurred in Arizona."

Because of the premeditation instruction and argument in Appellant's case, however, the verdict merely establishes that an instant of time existed between Appellant's knowledge and his action. The verdict does not establish actual premeditation; the State argued that it did not have to prove it. (Nor does the verdict establish that Appellant acted intentionally; the indictment charged that he acted "knowing that his conduct would cause death.")

In conclusion, we find that the efforts to define premeditation have varied over the years but the meaning of premeditation has not: It is something that a person does; it is actual reflection. Considering the problems evident with the premeditation instruction and argument in this case, and the need to revise the premeditation instruction, we have four suggestions:

■ 1. The instruction should provide that premeditation requires actual reflection.

2. The "instantaneous as successive thoughts" language is so potentially misleading in an instruction on premeditation that the court might omit such comment from the instruction and leave the "time" factor for proper argument by counsel.

3. If the court elects to comment on how quickly premeditation can occur, the instruction should also contain a balancing comment to the effect that an act cannot be both impulsive and premeditated. Even when the case has no manslaughter issue, any court comment on the "time" factor should be balanced.

4. One way to implement these suggestions is to give a premeditation instruction which recites the statutory language as its first paragraph, then adds a second paragraph with language to the effect that, "Premeditation requires actual reflection and it may be proved by direct or circumstantial evidence."

### III.

Appellant claimed that he acted impulsively, without premeditation. Substantial evidence supports this claim. At sentencing, the trial court stated that defendant "impulsively and for no reason pulled out a gun and shot this person." If a properly-instructed jury viewed the evidence as the trial court did, it might have a reasonable doubt about premeditation; it might convict on second degree murder. On the other hand, if a properly-instructed jury viewed the evidence as our dissenting colleague does, it might convict on first degree murder.

In deciding whether the first degree murder conviction must be reversed, we apply the principle that, "In Arizona, error is not reversible if substantial evidence in the record supports the verdict and it can be said beyond a reasonable doubt that the error did not contribute significantly to the verdict." *State v. Rankovich*, 159 Ariz. 116, 120, 765 P.2d 518, 522 (1988). We conclude that the jury instruction on premeditation, as argued by the State, obliterated the distinction between first and second degree murder. This distinction was the only contested issue in the trial. Because substantial evidence supports both Appellant's argument for second degree murder and the State's argument for first degree murder, we cannot say beyond a reasonable doubt that the error in the premeditation instruction did not contribute significantly to the first degree murder verdict.

### IV.

Regarding Judge Ryan's dissent, we have six comments:

1. The dissent would affirm because any error was harmless. We agree that substantial evidence exists to support a first degree murder conviction, but the dissent apparently rejects the notion that substantial evidence also exists to support a second degree murder conviction. To argue that the evidence of premeditation was overwhelming in this case, one must either reject the trial court's finding that the killing was impulsive or argue that a murder can be both impulsive and premeditated. In our opinion, a killing cannot be both impulsive and premeditated, and substantial evidence supports either finding in this case.

2. In arguing for a first degree murder conviction, the dissent compares this case to *Rankovich*. Factual similarities exist, but the evidence of premeditation was stronger there and the error of law was more serious here. For example, a few moments before killing the victim, Rankovich "drew a pistol and pointed it at the bartender stating that he would kill her if she called the police." 159 Ariz. at 118, 765 P.2d at 520. Rankovich then fought with—and got thrashed by—the victim until others stepped in. *Id.* When the fight was over, someone asked the victim what happened to his nose, the victim said that Rankovich broke it with his gun, and someone else said, "Gun, what gun?" *Id.* Rankovich then pulled out a gun, smirked, and shot the victim three times, with a "discernible pause" after the first shot. *Id.* The supreme court found the evidence of guilt "overwhelming." *Id.* at 120, 765 P.2d at 522. Getting back to Appellant's case, when the trial court, with reason, finds that the killing was impulsive, we doubt that the evidence of premeditation was overwhelming.

Furthermore, the error found harmless in *Rankovich* did not involve a matter of law concerning the only disputed issue in the case; it involved testimony from an officer about defendant's "affinity for Russia and East Germany and his general dislike for the United States." *Id.* at 119–120, 765 P.2d at 521–22.

3. The dissent argues that the instruction in Appellant's case was proper because it "states that first-degree murder requires a 'period of reflection.'" *Infra* at p. 74, 945 P.2d at p. 385. We agree that the instruction supported both the correct and incorrect meaning of premeditation; it was ambiguous. What turned ambiguity into reversible error was the State's mis-argument, the Appellant's timely objection, the trial court's failure to correct the State's error, and the less-than-overwhelming evidence of premeditation. That the long-standing RAJI instruction contains the "period of reflection" language supports our position that, both before and after 1978, premeditation requires actual reflection.

■ 4. The dissent argues that the jury instruction on premeditation should not go beyond the language of the statute. The RAJI "period of reflection" language, which the dissent argues makes the instruction a proper one, is not in the statute, either. Nor is the RAJI "instantaneous as successive thoughts" language. On the other hand, the "instant effect" sentence is in the statute but *Amarillas* states that it should not be in the instruction in a case such as this. 141 Ariz. at 623–24, 688 P.2d at 631–32. The fact is that premeditation is difficult to fairly explain and the statutory definition can be misconstrued, as it was in this case. To adequately instruct on premeditation, the court must not be locked into using only the statutory language—especially when the State succeeds, as it did in this case, in having the non-statutory "instantaneous as successive thoughts" language in the instruction.

5. The dissent cites *Rankovich* as supporting the argument that premeditation is just a period of time. The dissent fairly discusses some *Rankovich* dicta. Such dicta is a problem in this area of the law. We have discussed cases where, when the definition of premeditation has been in issue, the supreme court has held that it requires actual reflection. We acknowledge that cases exist where the "period of time" language has been recited without adding that actual reflection is required. We agree with the dissent that clarification from the supreme court is desirable. That we have such a reasoned dissent highlights the need for clarification.

6. The dissent announces that, "under the majority's reasoning, an instruction based on A.R.S. section 13–1101(1) now constitutes error." *Infra* at p. 74, 945 P.2d at p. 385. This is an overstatement. Furthermore, even with the instruction given in this case, the State could have properly argued the law. The reversible error arose here because the premeditation instruction was ambiguous, the State mis-argued the law, the Appellant timely objected, the trial court failed to correct the error, and the error was not harmless. We will not speculate on what might happen on other facts.

Reversed and remanded for new trial.

FIDEL, Judge, concurring.

I join entirely in the opinion of Judge Noyes. I write separately to add this comment. The lead opinion offers some suggestions for drafting a clear and neutral instruction on premeditation. A guidepost to such an effort may be found in our State Bar's recently published Revised Arizona Jury Instructions (Civil), Third Edition. In a prefatory note to that addition, the Civil Jury Instructions Committee identified these drafting objectives, among others:

1. "RAJI instructions are designed to be neutral, brief, and simply worded."
2. "The Committee has intentionally left out routinely requested argumentative instructions and those which explore overly detailed rules of law."
3. "Requested jury instructions selectively quoting from appellate court opinions seldom are helpful, nor do they generally reflect the kind of language best adapted to jury instructions."
4. "[The Committee has rejected] instructions which fit nearly argumentative, narrow, and particularized statements of law, whether they favor plaintiffs or defendants."

RAJI (Civil) 3d (1997), Statement of Purpose and Approach.

These principles should apply equally to criminal as to civil jury instructions. RAJI Criminal 11.051 violates each of them. The

new civil instructions are put forward as "clear but terse statements of law." *Id.,* Introduction to the Third Edition. RAJI 11.051, which is neither, should be redrafted in that mode.

RYAN, Judge, dissenting.

I respectfully dissent. Here, any error resulting from the first-degree murder instruction was harmless beyond a reasonable doubt, regardless of whether actual reflection is an element of that crime. Substantial evidence supports the verdict, and the alleged "'error did not contribute to or affect the verdict.'" *State v. Krone,* 182 Ariz. 319, 321, 897 P.2d 621, 623 (1995) (quoting *State v. Bible,* 175 Ariz. 549, 588, 858 P.2d 1152, 1191 (1993), *cert. denied,* 511 U.S. 1046, 114 S.Ct. 1578, 128 L.Ed.2d 221 (1994)); *see also Rankovich,* 159 Ariz. at 120, 765 P.2d at 522.[1]

In *Rankovich,* the defendant shot and killed the victim after the two had a bar fight. In finding that erroneous admission of evidence of the defendant's ethnicity was harmless, the court noted that the defendant had smirked just before the killing and had shot the victim three times in the back with a noticeable pause between the first and second shots. *Id.* The evidence in this case is equally convincing. Appellant had a prior dispute with a person who looked just like the victim, feigned pleasantries with the victim just before the killing, shot the victim twice, paused, and then fatally shot the victim again in the back left shoulder while the victim was retreating and falling to the ground. Even assuming the jury instruction was incorrect and allowed the prosecutor to argue that proof of actual reflection was unnecessary, any such error did not affect the verdict because there was substantial evidence that such reflection occurred. This conclusion is supported by the medical examiner's testimony that the victim had sustained a "gunshot wound which entered in the posterior left back behind the armpit on the . . . shoulder blade," and that such wound was the "more rapidly fatal" of the three. Additionally, although the trial judge over-

ruled defense counsel's objection to the prosecutor's alleged misstatement of the law, she immediately went on to instruct the jury to disregard anything the lawyers said about what the law is. This admonition removed any prejudice to Appellant resulting from the prosecutor's claimed erroneous misstatement of the law. Thus, given the substantial evidence of premeditation and the trial court's immediate admonition, no reasonable jury could come to any other verdict.

The majority's emphasis on the comments of the trial judge at sentencing characterizing the murder as impulsive is not persuasive. She made no finding that this murder was impulsive; if she had, I am sure she would have reduced the charge to second-degree murder. Moreover, this comment is not evidence. I believe we must base our decision on the evidence and not a statement made at sentencing that was not a formal finding.

Further, even if first-degree murder requires proof of actual reflection, and the evidence was not substantial on this element, I am not convinced that the given jury instruction was defective. The majority concludes that the instruction improperly permitted an argument that premeditation is a function of time rather than actual reflection. This position overlooks the last sentence of the instruction, which states that first-degree murder requires a "period of reflection". It is here where the difference between first and second-degree murder was defined for the jury; the instruction benefitted Appellant because it required actual reflection. Had the instruction strictly adhered to the statute it would have stated that first-degree murder is distinguished from second-degree murder by a "period of time sufficient to permit reflection," or an "opportunity for reflection." Instead, the instruction required actual reflection and in doing so was correct under the majority's definition of premeditation. *State v. Cruz,* 189 Ariz. 29, 938 P.2d 78, 84 (App. 1996) (jury instructions are reviewed as a whole).

---

1. Incorrect jury instructions are subject to a harmless error analysis. *California v. Roy,* —— U.S. ——, ——, 117 S.Ct. 337, 338, 136 L.Ed.2d 266 (1996); *Pope v. Illinois,* 481 U.S. 497, 503–

04, 107 S.Ct. 1918, 1922–23, 95 L.Ed.2d 439 (1987); *accord State v. Jensen,* 153 Ariz. 171, 177, 735 P.2d 781, 787 (1987).

I also disagree with the majority's willingness to graft a requirement of actual reflection onto the statutory definition of premeditation. This disagreement stems from A.R.S section 13–1101(1)'s clarity: "premeditation" is intent or knowledge of killing which precedes the killing "by a length of time to permit reflection." Under this language no actual reflection is required, and the jury decides the factual question of whether adequate time for reflection existed. Except for rare cases, reflection most often can be proven only by the passage of time. The legislature clearly decided not to require the state to prove actual reflection. Instead, it determined that an objective standard of proof of a passage of some period of time would be adequate. Such a determination is a legitimate legislative prerogative. If the language of a statute is plain, we should look no further to determine its meaning. *State v. Williams*, 175 Ariz. 98, 100, 854 P.2d 131, 134 (1993). Further, if the legislature had intended that actual reflection be an element of first-degree murder, it could have readily said so. *See State v. Taylor*, 169 Ariz. 121, 123, 817 P.2d 488, 490 (1991).

This position is supported by *Rankovich*. In its discussion of the elements of first-degree murder in the context of the defendant's claim that he was too intoxicated to premeditate, the supreme court did not find that actual reflection was required. 159 Ariz. at 121–22, 765 P.2d at 523–24. Rather, the court reiterated the requirement that there be a length of time that would permit reflection. *Id.*; *see also State v. Murray*, 184 Ariz. 9, 32, 906 P.2d 542, 565 (1995), *cert. denied*, 518 U.S. 1010, 116 S.Ct. 2535, 135 L.Ed.2d 1057 and —— U.S. ——, 117 S.Ct. 193, 136 L.Ed.2d 130 (1996) ("To show premeditation, the state must prove that the defendant acted with either the intent or knowledge that he would kill his victim and that such intent or knowledge preceded the killing by a length of time permitting reflection.") (citing *Rankovich*); *State v. Neal*, 143 Ariz. 93, 98, 692 P.2d 272, 276 (1984) (same); *State v.*

*Just*, 138 Ariz. 534, 546, 675 P.2d 1353, 1365 (App.1983) (same). In *Murray*, the court found that evidence of several gunshots and the victims' helpless positions "show[ed] that defendants had *sufficient time to permit reflection*." 184 Ariz. at 32, 906 P.2d at 565 (emphasis added).

I also note that, under the majority's reasoning, an instruction based on A.R.S. section 13–1101(1) now constitutes error. Although clearly not dispositive of the issue, I suspect a few trial judges and practitioners will be surprised to learn that the statute's explicit definition of premeditation is inadequate because it does not specify that actual reflection is required. To me, the legislature clearly intended otherwise.[2]

I appreciate the majority's concern that, under the present statutory definition of premeditation, the line between first and second-degree murder is not entirely clear. But this complaint, while reasonable, is not new. "[W]hile the distinction between premeditated and unpremeditated murder fails as an intellectual edifice, it has served a critical if ill-articulated purpose: it allows juries to bring in a second-degree verdict when murder appears to them to be the product of passion rather than a cool mind." Benjamin Cardozo, "What Medicine Can Do for Law," LAW AND LITERATURE AND OTHER ESSAYS at 155 (1931). Thus, while I share the majority's concern, the answer more appropriately rests with the legislature. "Defining criminal behavior and establishing penalties for violating criminal laws are functions of the legislature, not the judiciary." *State v. Womack*, 174 Ariz. 108, 112, 847 P.2d 609, 613 (App.1995).

The majority also criticizes the premeditation instruction in this case because "the instantaneous as successive thoughts in the mind" language was not balanced by language distinguishing premeditation from impulse. While this may be a fair criticism, Appellant's counsel invited and waived any possible error by requesting such language in his proposed instructions. *State v. Diaz*, 168 Ariz. 363, 365–66, 813 P.2d 728, 730–31

---

**2.** The majority's reference to a partisan analyst's summary, opinion at 69–70, 945 P.2d at 380–381, is unpersuasive. The statement is vague and, in my view, incorrect given the significant changes the 1978 code made to the homicide

statutes. *Compare* former A.R.S. §§ 13–451 and 452, repealed by Laws 1977, ch. 142, § 60, eff. Oct. 1, 1978, with A.R.S. §§ 13–1101(1),–1105, amended by Laws 1977, ch. 142 § 60, eff. Oct. 1, 1978.

(1991). Moreover, our supreme court has expressly approved this language. *See State v. Zmich,* 160 Ariz. 108, 111, 770 P.2d 776, 779 (1989). Thus, there was no error, and even if there was, it was waived.

To be sure, the supreme court on occasion in discussing whether the evidence supported the charge of first-degree murder has said premeditation is proven by evidence showing deliberation and reflection. *See e.g., Willoughby,* 181 Ariz. at 539, 892 P.2d at 1328. On the other hand, that same court expressly approved definitions of premeditation that did not require an act of reflection. *See e.g., Murray,* 184 Ariz. at 32, 906 P.2d at 565; *Rankovich,* 159 Ariz. at 121–22, 765 P.2d at 523–24; and *Amarillas,* 141 Ariz. at 623, 688 P.2d at 631. Also, on its face the statute clearly does not require actual reflection. These factors force me to disagree with the majority's rationale.

In sum, the instruction here did not affect or contribute to the verdict in light of the substantial evidence of Appellant's actual reflection. Further, the court's instructions, when read in their entirety, did require actual reflection. Finally, the statutory definition of premeditation does not require proof of actual reflection. Accordingly, I would affirm.