34 P.3d 382

**STATE of Arizona, Appellee,**

v.

**Larry D. THOMPSON, Appellant.**

**No. 1 CA–CR 00–0439.**

Court of Appeals of Arizona, Division 1, Department B.

Oct. 25, 2001.

274

Janet Napolitano, Attorney General By Paul J. McMurdie, Chief Counsel, Criminal Appeals Section and Kerri L. Chamberlin, Assistant Attorney General, Phoenix, Attorneys for Appellee.

James Haas, Maricopa County Public Defender by James R. Rummage, Deputy Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

SULT, Judge.

¶ 1 A jury convicted Defendant Larry D. Thompson of the first-degree premeditated murder of his estranged wife. On appeal, defendant challenges the constitutionality of the statute defining premeditation, the concept that distinguishes first-degree from second-degree murder. *See* Arizona Revised Statutes ("A.R.S.") § 13–1101(1) (2001). Because we agree that the statutory definition,

as judicially construed, lacks sufficient specificity to provide an adequate standard by which a fact-finder can differentiate the two degrees of murder, we conclude that the statute is void for vagueness. However, we also find that the defect in the statute did not infect the proceedings against defendant. Because there was no harm, defendant's conviction and sentence must be affirmed.

## BACKGROUND

¶ 2 On the morning of May 17, 1999, defendant shot his estranged wife multiple times with a nine millimeter handgun. Defendant was arrested shortly thereafter and admitted the shooting. The state subsequently indicted him on one count of intentional or knowing premeditated first-degree murder under A.R.S. § 13–1105(A)(1) (2001).

¶ 3 Prior to trial, defendant moved to dismiss the charge, arguing that the 1998 amendment to the premeditation statute so changed the meaning of the term that it no longer meaningfully distinguished first-degree from second-degree murder, and the two offenses were now effectively merged into one. The trial court denied the motion without comment.

¶ 4 At trial, the defense maintained that defendant killed his wife in the heat of passion, and was therefore guilty of manslaughter or, at most, second-degree murder. The jury rejected this defense and convicted him of premeditated first-degree murder. The trial court sentenced defendant to prison for the remainder of his natural life, and he timely appealed.

## ISSUE

¶ 5 Although defendant apportions his arguments on appeal among three perceived issues, there is actually only one material issue to be resolved. In 1998, when the legislature changed the definition of premeditation to provide that the state need not prove actual reflection, did this amendment cause the distinction between first- and second-degree murder to become so vague that a fact-finder could decide between the two only by making a completely arbitrary selection, a method of fact-finding prohibited by Fourteenth Amendment due process principles?

## ANALYSIS

¶ 6 We begin with a brief discussion of the basic legal precepts that guide our analysis. It is well settled that a legislature has broad, discretionary power to classify crimes and provide operative definitions for those crimes. *State v. Hickey*, 114 Ariz. 394, 396–97, 561 P.2d 315, 317–18 (1977). For example, a legislature may classify homicide in any manner it chooses, and could, if it wished, abolish the traditional distinctions among the various degrees of murder and codify a single offense of homicide encompassing every instance in which one person unlawfully takes the life of another. *See id.*

¶ 7 However, the Arizona Legislature has chosen to retain the traditional distinction between degrees of murder, classifying intentional or knowing murder into first-degree murder if committed with premeditation, and second-degree murder if not. *Compare* A.R.S. § 13–1105(A)(1) *with* A.R.S. § 13–1104(A)(1) and (2). When a legislative body chooses to distinguish between degrees of an offense in this manner, its power to choose the classifications and definitions necessary to accomplish its purpose is not unfettered. Rather, its discretion is circumscribed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. A fundamental restriction placed on the legislative power by this provision is that the definitions or classifications employed shall not be arbitrary or capricious, nor permit arbitrary or capricious application. *See State v. Leeman*, 119 Ariz. 459, 462, 581 P.2d 693, 696 (1978).

¶ 8 One of the due process devices used to measure legislation for compliance with these requirements is the vagueness doctrine. Put simply, the doctrine holds that a law that is vague is void. A fuller statement of the doctrine, and its rationale, is provided in *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972):

It is a basic principle of due process that an enactment is void for vagueness if its

prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

408 U.S. at 108–09, 92 S.Ct. 2294 (footnotes omitted).

¶ 9 Regarding the second evil of a vague statute, the danger of arbitrary and discriminatory application, the United States Supreme Court has noted that a law that lacks explicit standards licenses the jury to create its own standard in each case. *Herndon v. Lowry*, 301 U.S. 242, 262–63, 57 S.Ct. 732, 81 L.Ed. 1066 (1937). What is required of a statute is that it prescribe a reasonably ascertainable standard of guilt for all cases arising under it. *Id.* at 261, 57 S.Ct. 732. "[A] law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves . . . judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case." *Giaccio v. Pennsylvania*, 382 U.S. 399, 402–03, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966).

¶ 10 Defendant's challenge to the premeditation statute is based on this "arbitrary and discriminatory application" prong of the vagueness doctrine. According to defendant, premeditation is intended to be the benchmark between first- and second-degree murder by which all the participants in the criminal justice system, but especially jurors, can make a reasoned distinction between first- and second-degree murder. However, when the legislature eliminated proof of actual reflection as a requirement for premeditation, this obliterated any meaningful difference be-

tween the two degrees of murder. Thus, after determining that a defendant had formed the intent or knowledge necessary to constitute murder, jurors were left with no principled way to decide in which category to place the murder, opening the door to arbitrary decisions based on unacceptable criteria such as sympathy or prejudice.

¶ 11 Our analysis of defendant's argument starts with the premeditation statute itself. From 1978 to 1998, the legislature defined premeditation to mean ·

> that the defendant acts with either the intention or the knowledge that he will kill another human being, when such intention or knowledge precedes the killing by a length of time to permit reflection. An act is not done with premeditation if it is the instant effect of a sudden quarrel or heat of passion.

A.R.S. § 13–1101(1) (1978). Read literally, this statute defined premeditation in terms only of the passage of time but did not quantify the amount of time that must elapse for premeditation to have occurred. The only guidepost the statute provided as to the amount of time sufficient to constitute premeditation was whatever amount was necessary to permit reflection.

¶ 12 Arizona courts, however, did not read the statute literally. For example, in *State v. Kreps*, 146 Ariz. 446, 448–49, 706 P.2d 1213, 1215–16 (1985), after setting forth the statute *in haec verba*, our supreme court noted that the state was required to prove that before the act of killing, "a plan to murder was formed after the matter had been made a subject of deliberation and reflection." In *State v. Schurz*, 176 Ariz. 46, 55 n. 5, 859 P.2d 156, 165 n. 5 (1993), our supreme court observed in passing that "[i]n addition to intention or knowledge, premeditation requires reflection." Thus, notwithstanding the statute's narrower definition of premeditation as solely the passage of time, our supreme court continued to treat premeditation as also including the act of reflection in addition to the passage of time.

¶ 13 More recently, this court in *State v. Ramirez*, 190 Ariz. 65, 945 P.2d 376 (App. 1997), directly held that statutory premeditation required that not only must a period of

time to permit reflection elapse, but also that actual reflection must occur during this period. 190 Ariz. at 69, 945 P.2d at 380. We relied on pre–1978 Arizona Supreme Court cases defining premeditation as requiring actual reflection as well as some legislative history connected with the 1978 revisions to the Arizona criminal code that indicated the legislature did not intend to significantly change the existing law relative to homicide. *Id.* at 70, 945 P.2d at 381. In addition, we surveyed some post–1978 Arizona Supreme Court jurisprudence on the subject, such as the cases noted above, which indicated that the supreme court continued to regard premeditation as a concept involving actual reflection. *Id.*

¶ 14 In the 1998 legislative session, however, the Arizona Legislature expressed its disagreement with *Ramirez* by effectively overruling it. The premeditation statute was changed to specifically address the issue of reflection, and the amended statute now reads:

> "Premeditation" means that the defendant acts with either the intention or the knowledge that he will kill another human being, when such intention or knowledge precedes the killing by any length of time to permit reflection. **Proof of actual reflection is not required,** but an act is not done with premeditation if it is the instant effect of a sudden quarrel or heat of passion.

1998 Ariz. Sess. Laws. ch. 289, § 6 (emphasis added).

¶ 15 The impact of this amendment is clear. By specifically relieving the state of any obligation to prove actual reflection, the legislature emphasized its intention that premeditation does not require that the specific thought process of reflection must occur during the prescribed period of time. Rather, premeditation consists solely of the passage of the specified period of time. It is important to note that by eliminating the need to prove actual reflection, *a fortiori* the legislature also eliminated actual reflection itself as a part of the definition. Any suggestion that actual reflection still constitutes an aspect of premeditation not only contravenes the clear import of the amendment but also runs counter to the Due Process Clause. That clause permits a criminal conviction to stand only "upon proof beyond a reasonable doubt of every fact necessary to constitute the crime ... charged." *In re Winship*, 397 U.S. 358, 366, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Under this principle, the legislature could not constitutionally retain actual reflection as an element of premeditation yet relieve the state of the burden of proving it. *Patterson v. New York*, 432 U.S. 197, 210, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) ("[T]he Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense ... charged."). Thus, we conclude that the 1998 amendment was designed to ensure that premeditation was defined solely as the passage of a period of time, to eliminate actual reflection as part of the definition, and to overrule the case law to the contrary.

¶ 16 Defendant does not contest the legislature's right to distinguish between degrees of murder solely on the basis of a period of time. However, he contends that in this particular case, the legislature has created a statute that is unconstitutionally vague on its face because defining premeditation as "any length of time" with no further guidance to a jury of how long such a period must be fails the *Herndon* requirement of a sufficiently ascertainable standard of guilt. 301 U.S. at 261, 57 S.Ct. 732. We reject this contention, however, because a fair reading of the statute, combined with a common-sense consideration of how jurors perform their function, demonstrates that the time period employed by the statute to describe premeditation has enough substance to provide a workable method for distinguishing between degrees of murder.

¶ 17 We first note that "any length of time" is not undefined in the statute. While the statute has eliminated the need to prove actual reflection, it nevertheless has retained the concept of reflection as the guidepost to determining the compass of "any length of time." It does so by attaching "to permit reflection" as the qualifying feature of "any length of time." However, the statute does not in turn define reflection, but this omission does not undermine reflection's efficacy as a descriptive aid.

¶ 18 When a word in a statute is undefined, courts apply the ordinary meaning of the term. *State v. Korzep,* 165 Ariz. 490, 493, 799 P.2d 831, 834 (1990). This holds true when the term is part of a jury instruction based on a statute, and jurors are usually instructed to apply the ordinary meaning of any word or phrase not defined by the court. *See State v. Barnett,* 142 Ariz. 592, 594, 691 P.2d 683, 685 (1984) (the court need not define a word if it is one commonly understood by those familiar with the English language). Therefore, when asked to apply the "any length of time to permit reflection" criterion, jurors will use the ordinary meaning of "reflection" to determine what length of time is necessary to constitute premeditation.

¶ 19 The next question is what is the ordinary meaning of "reflection" that jurors would use. In response, we think it fair to presume that definitions from widely used and respected dictionaries represent the ordinary meanings of words as understood by lay jurors. *See State v. Wise,* 137 Ariz. 468, 470 n. 3, 671 P.2d 909, 911 n. 3 (1983) (Random House Dictionary of the English Language-used in statutory construction context); *accord In re Paul M.,* 198 Ariz. 122, 124–25, ¶ 7, 7 P.3d 131, 133–34 (App.2000) (Webster's Third New International Dictionary); *State v. Mahaney,* 193 Ariz. 566, 568, ¶¶ 12–13, 975 P.2d 156, 158 (App.1999) (Webster's College Dictionary). We find in the Random House Unabridged Dictionary 1620 (2d ed.1993) that "reflection" is defined, *inter alia,* as "a fixing of the thoughts on something; careful consideration." Synonyms include "meditation, rumination, deliberation, cogitation, study, [and] thinking." *Id.* Thus, lay jurors charged with determining whether the state has proved premeditation would require evidence of a passage of time long enough to encompass a somewhat complicated and involved thought process, the kind of process involved, for example, in "careful consideration." Put another way, we believe that by associating reflection, and the time period implicated in the ordinary meaning of that concept, with the "any length of time" criterion for premeditation, the statute tells jurors that "any length of time to permit reflection" is a time period of some substance. In order to find premeditation, jurors must find that substance by finding a time period sufficient to encompass a complex thought process.

¶ 20 We acknowledge that the "any length of time to permit reflection" standard is less precise than, for example, an "actual reflection" standard. The vagueness doctrine, however, does not demand mathematical precision. *Grayned,* 408 U.S. at 110, 92 S.Ct. 2294. A penal statute is not rendered void for vagueness merely because it grants some discretion to those who administer the law. 1 Wayne R. Lafave & Austin W. Scott, Jr., *Substantive Criminal Law* § 2.3(c), at 133 (1986). "The criminal law is full of instances in which the legislature has passed on to the administrators some responsibility for determining the actual boundaries of the law, as with the frequent occasions when a jury is asked to determine whether the defendant acted 'reasonably' in some respect." *Id.*

¶ 21 We think that "any length of time to permit reflection" is one of those instances. When employed as a standard for adjudication, it complies with the requirements of the vagueness doctrine because it provides an adequate benchmark to permit jurors to non-arbitrarily distinguish between first- and second-degree murder in each case. Consequently, we hold that the premeditation statute is not unconstitutionally vague on its face.

¶ 22 This does not end our examination, however, because in vagueness jurisprudence the inquiry is not directed solely at the face of the statute but includes any judicial interpretation of the statute's language. 1 Lafave & Scott, *supra,* § 2.3(a), at 127 (a statute is not tested on its face, but rather with its judicial gloss). The United States Supreme Court, in dealing with a vagueness challenge to a New York obscenity statute, had this to say about a reviewing court's evaluation of a statute that had previously been construed in state courts:

This construction fixes the meaning of the statute for this case. The interpretation by the Court of Appeals puts these words in

the statute as definitely as if it had been so amended by the legislature.

*Winters v. New York,* 333 U.S. 507, 514, 68 S.Ct. 665, 92 L.Ed. 840 (1948).

¶ 23 Thus, our analysis of the "any length of time to permit reflection" language is incomplete until we also consider any interpretation accorded this language by our supreme court. Before doing so, we acknowledge that the supreme court cases we consider were decided before the 1998 amendment. It is clear, however, that the amendment did not implicate these interpretations because the amendment did not change the relevant "length of time to permit reflection" language. It did change "a" to "any" before "length of time" but this does not change the essential meaning of the phrase. Therefore, because vagueness analysis requires it, we treat these interpretations as an integral part of the statute.

¶ 24 We are also cognizant of the principle that when the legislature amends an existing statute, it is presumed to be aware of prior judicial constructions of the statute by our supreme court. *State v. Superior Court,* 104 Ariz. 440, 442, 454 P.2d 982, 984 (1969). Thus, if the legislature retains previously construed terms within the amended version, we also presume that it approves the prior construction and· intends those terms to continue to have the same meaning. *Id.; State v. Jones,* 94 Ariz. 334, 336, 385 P.2d 213, 215 (1963); *State v. Pennington,* 149 Ariz. 167, 168, 717 P.2d 471, 472 (App.1985). That the legislature retained the "any length of time to permit reflection" language, thereby presumptively approving the meaning accorded the phrase by our supreme court, is an additional reason why we must incorporate the judicial interpretations into our analysis.

¶ 25 Turning to the prior interpretations, a clear pronouncement of the meaning our supreme court has placed on the "any length of time to permit reflection" language appears in *State v. Hutton,* 143 Ariz. 386, 694 P.2d 216 (1985). In that case, the court stated:

Premeditation exists when a defendant acts with the knowledge or intention that he will kill another human being, and such knowledge or intention precedes the killing by a length of time to permit reflection. A.R.S. 13–1101(1). **This length of time can be as instantaneous as the time it takes to make successive thoughts to kill and can be proved by circumstantial evidence.**

143 Ariz. at 389, 694 P.2d at 219 (emphasis added). In later cases, the court continued to regard premeditation, as defined in the statute, as having the potential of being "as instantaneous as successive thoughts of the mind...." *State v. Kreps,* 146 Ariz. 446, 449, 706 P.2d 1213, 1216 (1985); *State v. Gulbrandson,* 184 Ariz. 46, 65, 906 P.2d 579, 598 (1995); *State v. Spears,* 184 Ariz. 277, 289, 908 P.2d 1062, 1074 (1996).

¶ 26 Obviously, the meaning we have suggested for "any length of time to permit reflection," the meaning the phrase would have if the statute were construed solely on its face, is inconsistent with an instantaneous passage of time. Yet, this is the meaning that the supreme court accords the phrase and is therefore the meaning that a jury would be required to use. Because a party is entitled to an instruction on any theory of the case supported by the evidence, *State v. Rodriguez,* 192 Ariz. 58, 61 ¶ 16, 961 P.2d 1006, 1009 (1998), juries must be instructed, if the state so requests, that when determining premeditation, the length of time necessary to permit reflection can be as instantaneous as successive thoughts. It does not require extended analysis to conclude that such a length of time is markedly shorter than, and perhaps even different in kind from, the length of time jurors would look for if they were applying the ordinary meaning of "any length of time to permit reflection."

¶ 27 Because we include the judicial interpretations of "any length of time to permit reflection" in our analysis, the vagueness inquiry shifts to whether a length of time benchmark for premeditation that does not implicate careful consideration, or meditation, or study, but occurs as quickly as the human mind can think successive thoughts, provides an adequate standard by which a jury can determine whether premeditation

has been proved. It is when the issue is framed in this manner that we find we must agree with defendant. When nothing more than an instant of time constitutes the dividing line between first- and second-degree murder, and there is nothing whatsoever that a jury must find has happened during this instant in order to find premeditation, it simply cannot be said that this provides "a sufficiently ascertainable standard of guilt." *Herndon,* 301 U.S. at 261, 57 S.Ct. 732.

¶ 28 To illustrate, consider that the premeditation statute contemplates that in every intentional or knowing murder, the seminal event for liability purposes is the formation of the decision to kill. A.R.S. § 13–1101(1) (premeditation exists "when such intention or knowledge **precedes** the killing by any length of time to permit reflection") (emphasis added). This decision is followed by the act of killing. If the murder is first-degree, it is because the evidence shows that in between these two events premeditation occurred. If the murder is second-degree, it is because the evidence shows that premeditation did not occur.

¶ 29 However, when premeditation is just an instant of time and nothing more, irrebuttable evidence of premeditation will exist in every case of intentional or knowing murder. This is so because common sense teaches that it is impossible to form the intent to kill and then perform the act of killing without there existing in between at least one instant of time sufficient for one thought. Every murder will be a premeditated murder and a jury will never be able to find differently except upon a basis other than the evidence, such as sympathy, prejudice, or some other arbitrary ground. Thus, although the legislature purported to classify murder by degree and impose significantly differing punishments depending upon the degree found by the jury, and further purported to provide a benchmark by which juries could reasonably distinguish between degrees, the benchmark is an illusory one. This is precisely the type of result condemned by the United States Supreme Court in *Giaccio* because "it leaves ... jurors free to decide, without any legally fixed standards, what is prohibited and what is not in

each particular case." 382 U.S. at 402–03, 86 S.Ct. 518.

¶ 30 We acknowledge that the supreme court decisions regarding the "instantaneous as successive thoughts" language were handed down during a period when actual reflection was assumed to be a necessary component of premeditation. If actual reflection were necessary in order to establish premeditation, it could be said that the "instantaneous as successive thoughts" definition did not deprive juries of an ascertainable standard. This is so because there was something that had to happen during the "in-between" instant—namely, reflection—which meant that there had to be some evidence that it did happen. Thus, juries were not asked to distinguish between degrees of murder arbitrarily but rather based on evidence.

¶ 31 However, the supreme court never conditioned the appropriateness of the "instantaneous as successive thoughts" interpretation of "any length of time" on the premise that actual reflection had to occur during that time. That is, the two were never made dependent upon each other. Therefore, we feel compelled to treat the "instantaneous as successive thoughts" interpretations as continuing to have binding precedential status.

¶ 32 Viewed in this context, we find that the judicial interpretation superimposed upon the legislative enactment has created a standardless vacuum in which determinations of degrees of guilt can only be decided arbitrarily. We must judge such a result unacceptable under the Due Process Clause and therefore conclude that A.R.S. § 13–1101(1), as judicially construed, is unconstitutionally vague.

## DISPOSITION

¶ 33 We lack the authority to overrule Arizona Supreme Court precedents and therefore cannot save the statute with a construction that eliminates the offending "instantaneous as successive thoughts" language. We note, however, that in this case the jury was not instructed using this language and the prosecution did not argue for a finding of premeditation based on this concept. Rather, the jury was instructed on

premeditation using just the language of the statute which, as we have held herein, is a constitutionally acceptable standard.

¶ 34 That the "instantaneous as successive thoughts" concept was not imparted to the jury in this case necessarily raises two additional issues. First, should we consider that part of defendant's vagueness argument that relies on the "instantaneous as successive thoughts" language even though the language did not affect defendant; that is, does defendant lack standing to complain? Second, notwithstanding the constitutional defect in the statute, should defendant's conviction for premeditated first-degree murder be affirmed because he was not harmed by the defect?

¶ 35 With regard to standing, ordinarily a person whose conduct clearly falls within the valid prohibition of a statute may not challenge the statute for vagueness. *State v. Tocco,* 156 Ariz. 116, 119, 750 P.2d 874, 877 (1988). However, standing is not a jurisdictional prerequisite in Arizona. *State v. B Bar Enterprises, Inc.,* 133 Ariz. 99, 101 n. 2, 649 P.2d 978, 980 n. 2 (1982). Consequently, if no objection is raised the issue is deemed waived, and the court may address the merits of the vagueness challenge. *See Matter of Pima County Juvenile Action No. S–114487,* 179 Ariz. 86, 91 n. 3, 876 P.2d 1121, 1126 n. 3 (1994).

¶ 36 In urging the trial court to invalidate the premeditation statute, defendant's trial counsel included the successive thoughts concept in his argument. Defendant's appellate counsel repeated the argument in his opening brief, pointing out that "[b]ecause Arizona case law has repeatedly stated that the time required for premeditation can be as 'instantaneous as successive thoughts of the mind' ... the facts surrounding any intentional or knowing murder—whether charged as a first degree murder or a second degree murder—would support a finding that there was sufficient time to premeditate." Neither in the trial court nor in this court did the state raise any question regarding defendant's standing to make this argument. We therefore consider the standing issue waived.

¶ 37 We also note that standing is a rule of judicial restraint that should give way when a matter of public importance is raised and the question is likely to recur. *Fraternal Order of Police Lodge 2 v. Phoenix Employee Relations Board,* 133 Ariz. 126, 127, 650 P.2d 428, 429 (1982). If, in the context in which the significant question is raised, it appears that the parties before the court are true adversaries who have fully developed the issue, a rigid adherence to a traditional concept of standing is not necessary. *Armory Park v. Episcopal Community Services,* 148 Ariz. 1, 6, 712 P.2d 914, 919 (1985).

¶ 38 The validity of Arizona's premeditation statute is unquestionably a matter of great public importance. Whether the statute, with its judicial gloss, is unconstitutionally vague will continue to arise in prosecutions throughout the state anytime the court or the prosecutor informs a jury that the length of time constituting premeditation can be as quick as successive thoughts of the mind. *See, e.g., Ramirez,* 190 Ariz. at 67, 945 P.2d at 378. Here, two parties who are clearly adversarial have fully and competently briefed the issue, and it makes little sense to permit possibly defective convictions to accumulate in the system when the question can be resolved now. We therefore conclude that defendant's lack of standing does not impair our ability to adequately address the constitutional validity of the premeditation statute nor does it outweigh the necessity that we do so.

¶ 39 Turning to the question of harmless error, we review the evidence under the premeditation definition actually used in this case, the definition we have found constitutionally valid. This review discloses that on the morning of the murder, defendant was seen outside the victim's home. Ten minutes later, he was seen on the porch of the home dragging the victim inside by her hair. Shortly thereafter, 911 dispatch received a call from the victim's home. Four gunshots were heard on the call. There was a nine-second delay between the first and third shot and another eighteen-second delay between the third and fourth shot, as well as a woman's scream. The medical examiner

testified that one of the shots was a contact shot that traveled through the victim's brain, and, therefore, was likely the fourth shot because the victim would have instantly been rendered unconscious and unable to moan or scream.

¶ 40 The evidence of the troubled relationship between defendant and the victim prior to the day of the murder, including defendant's threat to kill her if she divorced him, was more than sufficient to permit the jury to find that defendant formed the intent to kill much earlier than the morning of the murder. However, even if we assume that the jury found that defendant did not form the intent to kill until he arrived in the victim's neighborhood, the lapse of time between then and when the shooting was heard by the 911 dispatcher clearly qualifies as a sufficient time to permit reflection.

¶ 41 "Error, be it constitutional or otherwise, is harmless if we can say, beyond a reasonable doubt, that the error did not contribute to or affect the verdict." *State v. Bible,* 175 Ariz. 549, 588, 858 P.2d 1152, 1191 (1993). In this case, although we find the premeditation statute defective, we also find that the defect did not affect defendant's trial in any way. Because defendant was not prejudiced, his conviction will stand.

## THE CONCURRENCE

¶ 42 The concurrence appears to reject the notion that premeditation is defined solely as the passage of time when it states that "[t]he true test is not the duration of time but, rather, the extent of the reflection." Concurring Opinion, *infra* at ¶ 49. Not only does this contradict the definition chosen by the legislature, it also appears to insert actual reflection back into the mix. This impression is reinforced when the concurrence further states that premeditation "is a period of time during which the mind actually considers the performance of an act ..." *Id.* at ¶ 47. Also, "there nonetheless might be evidence regarding the nature of manner of the death sufficient to demonstrate an intent to kill according to a preconceived design." *Id.* at ¶ 48. Finally, "[t]he addition of the phrase 'proof of

actual reflection is not required' does not diminish the concept that premeditation is a design, a determination to kill, distinctly formed in the mind at any moment 'preced[ing] the killing by any length of time [sufficient] to permit reflection ...'" *Id.* at ¶ 49.

¶ 43 We agree that the ordinary lay understanding of premeditation might include such concepts as "a design, a determination to kill," "an intent to kill according to a preconceived design," or "actually consider[ing] the performance of an act." However, we believe that our analysis has shown that statutory premeditation in Arizona is defined solely as a passage of time which, while it must be sufficient to permit reflection, does not require that reflection actually occur, or that a design be preconceived, or that the mind actually consider the performance of the act of killing. We caution against suggesting premeditation definitions that vary from or even contradict the definition the legislature has settled upon. More importantly, we reiterate that actual reflection, or synonymous concepts, cannot be reinserted into premeditation and have the statute remain constitutional. The legislature cannot make a particular fact an element of a crime yet relieve the state of the burden of proving it. *In re Winship,* 397 U.S. at 366, 90 S.Ct. 1068. We should not attribute such an intent to the legislature by suggesting that premeditation still includes actual reflection.

## CONCLUSION

¶ 44 Defendant's conviction and sentence for premeditated first-degree murder are affirmed.

CONCURRING: CECIL B. PATTERSON, JR., Judge.

EHRLICH, Judge, concurring.

¶ 45 I respectfully differ from the majority's analysis of Arizona's first-degree (premeditated) murder[1] statute.[2] Therefore, I can only concur in the result.

1. First-degree murder also encompasses murder

committed in the course of a given felony. This

**284**

¶ 46 A person commits murder in the first degree if, "[i]ntending or knowing that [his] conduct will cause death, [he] causes the death of another with premeditation," Ariz. Rev.Stat. ("A.R.S.") § 13–1105(A)(1), and it is with the meaning of the word "premeditation" that we now struggle. Between 1978 and 1998, the statutory definition of "premeditation" was the following:

> [T]he defendant acts with either the intention or the knowledge that he will kill another human being, *when such intention or knowledge precedes the killing by any length of time to permit reflection*, but an act is not done with premeditation if it is the instant effect of a sudden quarrel or heat of passion.

A.R.S. § 13–1101(1)(1978)(emphasis added). In 1997, another panel of this court held that this definition of "premeditation" required not only time to allow "reflection" but proof that actual reflection had occurred during this time. *State v. Ramirez*, 190 Ariz. 65, 69, 945 P.2d 376, 380 (App.1997). In apparent response, the 1998 legislature amended the definition of "premeditation" to state the following:

> '*Premeditation*' means that the defendant acts with either the intention or the knowledge that he will kill another human being, when *such intention or knowledge precedes the killing by any length of time to permit reflection. Proof of actual reflection is not required*, but an act is not done with premeditation if it is the instant effect of a sudden quarrel or heat of passion.

A.R.S. § 13–1101(1)(1998) (emphasis added). Comparing the two statutory definitions, the legislature did not change the phrase upon which the majority focuses, "such intention or knowledge precedes the killing by any length of time to permit reflection," it added the critical sentence yet the one ignored by

the majority: "Proof of actual reflection is not required."

¶ 47 In both versions of the statute, the language defining premeditation says that the defendant's intent and knowledge must precede the murder by a length of time sufficient to permit reflection. Thus, "premeditation" is a period of time during which the mind actually considers the performance of an act, the formation of an intention or determination to kill, which results in the death of another.

¶ 48 While reflection may be suggested by the passage of time, premeditation relates to mental processes not necessarily readily susceptible to "proof of actual reflection." There may be no diary entries, documentation or other expression of the contemplated murder. There may not be overt "planning activity" or facts regarding the defendant's behavior prior to the killing which might indicate his design to take a person's life or facts about the defendant's previous behavior to suggest the contemplation of the victim's death, but there nonetheless might be evidence regarding the nature or manner of the death sufficient to demonstrate an intent to kill according to a preconceived design. *See, e.g., State v. Murray*, 184 Ariz. 9, 32, 906 P.2d 542, 565 (1995)(holding that shooting victims "execution-style" shows that defendants had sufficient time to permit reflection), *cert. denied*, 518 U.S. 1010, 116 S.Ct. 2535, 135 L.Ed.2d 1057 (1996). It was in seeming response to this reality ignored in the *Ramirez* opinion that the legislature acted. And it is in this context that the statutory phrase "proof of actual reflection is not required" can be fairly interpreted as not requiring specific proof of a "period of time" preceding the killing but, rather, leaving the jury free to draw from the totality of the evidence a reasonable inference as to the (lack of) spontaneity or adequacy of the defendant's reflection. The emphasis is on the

---

opinion pertains only to that manner of first-degree murder involving premeditation.

**2.** I add what is probably an unnecessary reminder that it is this court's duty to uphold the constitutionality of a statute whenever possible. *Arizona Dep't of Public Safety v. Superior Court (Falcone)*, 190 Ariz. 490, 494, 949 P.2d 983, 988 (App.1997); *Almendarez–Torres v. United States*,

523 U.S. 224, 237, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998) ("As Justice Holmes said long ago: 'A statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score,' " quoting *United States v. Jin Fuey Moy*, 241 U.S. 394, 401, 36 S.Ct. 658, 60 L.Ed. 1061 (1916).).

jury's resolution that a length of time sufficient to "permit reflection" preceding the murder occurred such as to warrant a legitimate inference that premeditation occurred. This is not dissimilar to asking jurors to determine whether an individual acted "reasonably" or to resolve other conflicts similarly elusive but dependent upon the human experience.

¶ 49 The addition of the phrase "proof of actual reflection is not required" does not diminish the concept that premeditation is a design, a determination to kill, distinctly formed in the mind at any moment "preced[ing] the killing by any length of time [sufficient] to permit reflection," certainly as distinguished from "the instant effect of a sudden quarrel or heat of passion." A.R.S. § 13–1101(1). Because it may be as alacritous as successive thoughts of the mind, *State v. Greene,* 192 Ariz. 431, 446 ¶ 72, 967 P.2d 106, 121 (1998); *see also State v. Hutton,* 143 Ariz. 386, 389, 694 P.2d 216, 219 (1985) ("This length of time [to permit reflection] may be as instantaneous as the time it takes to make successive thoughts to kill ....), there may be no palpable "proof of actual reflection." Indeed, "proof of actual reflection" may be as difficult of identification as that of any other thought because, if the jury believes from the evidence that the act constituting the killing has been preceded by and has been the result of premeditation, no matter how rapidly the act follows the thought, it is premeditated. For this reason, the law neither does nor can undertake to insist on proof of the actual period during which the thought must be pondered before it can ripen into "the intention or the knowledge that he will kill another human being" such that it is premeditated. This will vary with different individuals and under varying circumstances. The true test is not the duration of time but, rather, the extent of the reflection. A cold, calculated judgment and decision to kill may be·reached in the most brief period of time, but it is enough if there is time for the mind to think upon or consider the act and then determine to do it. If, therefore, the killing is not the instant effect of impulse—if there is hesitation or doubt to be overcome, a choice made as the result of thought or reflection, however short the

struggle between the intention and the act— it is sufficient to characterize the crime as premeditated murder.