635 P.2d 1217

**The STATE of Arizona, Appellee,**

v.

**Manuel Silvas SANCHEZ, Appellant.**

No. 2 CA–CR 2259.

Court of Appeals of Arizona,
Division 2.

July 31, 1981.

Rehearing Denied Oct. 2, 1981.

Review Denied Oct. 20, 1981.

Robert K. Corbin, Atty. Gen., by William J. Schafer, III, and Gary A. Fadell, Asst. Attys. Gen., Phoenix, for appellee.

Frank P. Leto, Tucson, for appellant.

## OPINION

BIRDSALL, Judge.

Appellant was convicted of all the charges against him: burglary in violation of A.R.S. § 13–1508, two counts of kidnapping, A.R.S. § 13–1304, sexual assault, A.R.S. § 13–1406 and aggravated assault, A.R.S. § 13–1204(A)(2) and (B). The jury found that an allegation of the dangerous nature of the offenses was true and appellant was given the presumptive sentence for each crime, that is, 7.5 years for the aggravated assault and 10.5 years for each of the other convictions. The court ordered that the sentences for Counts 3, 4 and 5 which involved the female victim, Brenda Barber, be served consecutive to the sentences on Counts 1 and 2 in which the victim was Phillip Bower.

Appellant and the two victims were neighbors in a trailer park in Tucson. The offenses were committed in the early morning hours in the victims' trailer home. Shortly before midnight, appellant came to the trailer. Phillip was awake watching television and Brenda was asleep in the only bedroom at the rear of the home. Although the three persons had seen one another on various occasions before, appellant and Phillip had just met that evening at the "landlord's" house. The two men visited for approximately one hour. Their conversation included the possible purchase of Phillip's car by appellant. A possible reason for the sale of the car was to enable Phillip to pay overdue rent to the landlord. Appellant's conduct changed abruptly. He pulled a knife, bound and gagged Phillip, went into the bedroom with the knife, and

assaulted Brenda. After several minutes of sexual activity, during the first part of which Brenda assumed appellant was Phillip, the two came back from the bedroom and both were naked. Brenda managed to escape out the trailer door with appellant pursuing her. She woke neighbors. Phillip freed himself and called the police. Appellant was arrested and identified at a show-up, even though he had shaved his beard in the interim.

On appeal appellant raises several issues:

1) A violation during trial of his Fifth Amendment right to remain silent;

2) The reading of the testimony of a witness to the jury during its deliberations;

3) The admission of appellant's statements to Phillip about prior bad acts;

4) The admission of photographs of appellant's tattoos;

5) The admission of a tape recording not previously disclosed;

6) The court's conduct of the trial; and

7) Imposition of consecutive sentences.

We will consider these issues in the order listed.

### Fifth Amendment

Unlike the usual problem where a defendant's exercise of his right to remain silent occurs during police questioning, here appellant did not talk about the offenses with a friend who visited him at the jail. The state called the friend, the landlord at the trailer court, as a prosecution witness. During his examination it was developed that he was not only a friend of appellant but was also related by marriage. In cross-examination by defense counsel, he testified that he saw appellant after his arrest at the trailer court and that appellant told him, "I don't know what's coming off". Actually the witness answered, "That's exactly what he (appellant) said" in response to a leading question from defense counsel. On redirect the prosecutor established that the witness had visited appellant twice at the jail while in custody on these charges, on June 1st and 15th. Referring to the visit on the 1st, he was asked, "What did Mr. Sanchez tell you

about the case at that time?". The witness responded, "He wouldn't talk about it." This was followed by the following questions and answers:

"Q. Okay, didn't talk about anything about it or anything?

A. He would never talk about it. We just talked about what he needed and what to do about his business and stuff.

Q. Then you went back June 15th, is that correct?

A. Probably so.

Q. At that time did you talk about the case?

A. He wouldn't talk about the case."

Defense counsel then interrupted with a request to approach the bench and in an unreported bench conference (the record was made at the next recess) the court sustained an objection to any further questioning concerning the jail visits. Appellant's counsel then, at the next opportunity, moved for a mistrial on the grounds that he had advised appellant not to discuss the case with anyone and that this questioning constituted a comment on his exercise of the right to remain silent. The trial court observed that the objection was sustained at the bench as soon as it was raised and denied the motion. No motion to strike the objectionable evidence was made and the court gave no special admonishment or instruction to the jury. After the objection was sustained, the prosecutor refrained from any further questioning on the subject and it was not mentioned in argument.

In *State v. Izzo*, 94 Ariz. 226, 383 P.2d 116 (1963) our Supreme Court held that silence does not amount to an admission against interest where it is on the advice of counsel. In that case the trial court ordered that testimony of a police officer that he had asked defendant questions which he refused to answer be stricken and admonished the jury. The opinion holds that the nature of the testimony together with the court's action was sufficient to neutralize any unfavorable inference.

■■ In the instant case the trial court's ruling sustaining the objection was proper.

The state may properly elicit testimony of a defendant's silence when accused by a person not associated with law enforcement if the defendant is not in custody for or charged with the crime. *State v. McAlvain*, 104 Ariz. 445, 454 P.2d 987 (1969). However, at the time of the jail visits, appellant was both charged and in custody. The fact of his silence on two occasions was clearly inadmissible even though it may have been proper redirect examination based on the cross-examination concerning appellant's statement to the witness at the scene of his arrest.

■■ Was it reversible error for the trial court to deny the motion for mistrial? We find that it was not. Generally, a defendant may not permit evidence to be introduced without objection and later make its admission grounds for a mistrial. *State v. Williams*, 107 Ariz. 262, 485 P.2d 832 (1971). However, if the admission of the testimony constitutes fundamental error then the mistrial should be granted. *Cf. id.* *State v. Williams*, supra (having found no fundamental error, a claimed error unsupported by a timely objection was not considered on appeal).

We find in this instance that the objectionable testimony does not constitute fundamental error. First, we observe that appellant's silence was not in response to questioning by a law enforcement officer. "The purpose of the 5th amendment to the United States Constitution is to protect persons against inducements and compulsions exerted by the government which might compel self-incrimination". *State v. McAlvain*, 104 Ariz. at 447, 454 P.2d at 989.

■ Next we note that the testimony elicited does not involve silence in the face of an accusation. *Cf. State v. Calhoun*, 115 Ariz. 115, 563 P.2d 914 (1977) (this case involved the defendant's silence in the face of an accusation by a polygraph examiner). Also, the witness did not even testify that he actually asked appellant about the event. The trial court's decision not to grant a mistrial will be reversed only if the matter urged as grounds was palpably improper and clearly injurious. *State v. Coleman*,

122 Ariz. 130, 593 P.2d 684 (App.1978), approved in part, disapproved in part on a different issue, 122 Ariz. 99, 593 P.2d 653 (1978). We find this rule particularly appropriate given the facts of this case. The testimony was not palpably improper nor was it clearly prejudicial.

### Re-reading of the Testimony

Appellant next contends that the reading of the testimony of a state's witness to the jury in his absence violated his Sixth Amendment right to confrontation and violated Rule 19.2, 17 A.R.S. Rules of Criminal Procedure.[1]

The record shows that sometime after the jury retired the foreman sent a note to the trial judge, "We would like to review the testimony of Dr. Vern Katz". The judge notified counsel in the courtroom without the jury or appellant present. Defense counsel objected on the grounds that the jurors should rely on their own memories and the entire testimony of the trial should be read if any is read.

The court determined to have the testimony of the one witness read, saying: "I'll let it be done. Unless counsel insists I would just, because I think that it is short, I would just let the Reporter go back in with the Bailiff and to read that testimony only with the Bailiff instructing them not to say anything while he's doing it and for the Bailiff and the Court Reporter to withdraw as soon as that's done. Is that all right?". Counsel for the state and appellant each agreed.

The next words in the transcript are: "(Whereupon the Reporter read to the jury the complete testimony of Vern Katz)". Sometime after this the jury returned their verdicts.

■ We agree that this procedure was improper and a violation of appellant's constitutional right to be present. *Bustamante v. Eyman*, 456 F.2d 269 (9th Cir. 1972); *State v. Perez*, 115 Ariz. 30, 563 P.2d 285 (1977); *State v. Armenta*, 112 Ariz. 352, 541 P.2d 1154 (1975). And since appellant had

no personal notice of the proceeding and his right to be present he cannot be held to have waived his presence. *See State v. Armenta*, supra. *Bustamante v. Eyman* set aside the Arizona Supreme Court decision in *State v. Bustamante*, 103 Ariz. 551, 447 P.2d 243 (1968). The trial court in *Bustamante* had granted the jury's request to have the recording of the court's instructions played for the jury. This was done in the courtroom in the presence of the judge and counsel but without the defendant. Counsel for the defendant "waived" defendant's presence and the trial judge "accepted" the waiver. The ninth circuit court held that the defendant had a constitutional right to be personally present in the courtroom when the instructions were replayed for the jury.

Although *Bustamante v. Eyman* emphasizes that the proceedings were held in the *courtroom,* we find that the fact that the instant procedure took place in the jury room does not obviate the error. Rule 22.3, 17 A.R.S. Rules of Criminal Procedure, provides that the jury may be recalled to the courtroom for the reading of the testimony. Since counsel could not waive appellant's presence, counsel surely could not agree that the testimony could be read in the jury room.

■ We must next determine if this error, even though it was of constitutional magnitude, requires reversal. Even constitutional error may be harmless if it can be determined beyond a reasonable doubt that it did not contribute to the conviction. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). In *Bustamante* the ninth circuit was unable to make this determination from the record before it. For that reason they remanded the case for further proceedings to determine if the error was harmless. Upon subsequently receiving additional record showing that the court's original instructions were played back in their entirety, that all members of the jury were present and could hear the

1. The rule provides that: "The defendant has the right to be present at every stage of the trial, including the impaneling of the jury, the

giving of additional instructions pursuant to Rule 22, and the return of the verdict."

instructions, and that neither the judge nor any court personnel said anything to the jury other than out of courtesy, the ninth circuit court then found beyond a reasonable doubt that the error was harmless. *Bustamante v. Cardwell*, 497 F.2d 556 (9th Cir. 1974).

In the instant case we have a complete record and are able to make a determination that the error was harmless beyond a reasonable doubt.

The material portion of the transcript concerning this proceeding has already been set forth verbatim in this opinion. The testimony of the witness which was read to the jury is contained in seven pages. The witness, a physician who examined the victim, identified vaginal swabs and pubic hair combings and described his findings on physical examination of the victim. He testified that he observed dark, dried blood on the outer portion of her vagina consistent with trauma which could have been produced by intercourse. He related some of the history given him by the victim which eliminated some other possible causes for the blood. Finally he told the jury that he found no sperm.

We hold that no prejudice resulted from re-reading this short portion of the record to the jury by the reporter in the presence of the bailiff.

### Prior Bad Acts

Prior to calling the victim, Phillip, as a witness, the court ruled, on a motion in limine, that he could testify about statements which appellant made while tying him. The statements as subsequently related to the jury were to the effect that all of his victims had remained alive and that he had only gotten away with it once before. Appellant's objection was that this testimony constituted evidence of prior bad acts. Even if we accept this characterization the evidence was well within exceptions which permit its admission to show intent, preparation and plan. Rule 404(b), 17A A.R.S. Rules of Evidence. The statements were also relevant to show why Phillip did not try to release himself until after appellant had left the trailer. This testimo-

ny helped to complete the story and to better enable the jury to understand other evidence. It was not necessary to show that appellant had actually committed any prior bad act since he boasted that he had. *See State v. Johnson*, 121 Ariz. 545, 592 P.2d 379 (App.1979).

### Tattoos

The phrases "Hate Cops" and "Lonely Drifter", were tattooed on appellant's hands and fingers. Both victims testified that they saw these tattoos. Photos of the tattoos were admitted over appellant's objection. We find they were properly admitted as evidence tending to identify appellant as the perpetrator of the crimes. Although appellant argued in the trial court that identity was not an issue, there was never any admission that appellant was the person involved. His counsel's cross-examination of witnesses belies his position that identity was not in issue. The state was properly permitted to prove this element of its case. Although the nature of the tattoos was prejudicial, the probative value of the exhibits outweighed the prejudice. *See State v. Ferrari*, 112 Ariz. 324, 541 P.2d 921 (1975).

### The Tape Recording

When the victim, Phillip Bower, called the sheriff to report the crime, a recording was made which contained not only that conversation but also the screams of the victim Brenda in the background. The state did not disclose the existence of this tape and did not intend to use it as evidence in the state's case. In cross-examination of Phillip, appellant's counsel asked questions inferring that the victims consented to appellant's sexual intercourse with Brenda. Consent had not been disclosed as a defense. The prosecutor then requested the court's permission to use the tape to rebut this inference under the theory that a consenting victim would hardly scream in such a convincing manner. Once a defendant proceeds with a defense not previously disclosed, the state may introduce rebuttal evidence which it has not

otherwise disclosed. *See State v. Shepherd*, 27 Ariz.App. 448, 555 P.2d 1136 (1976). The admission of the tape was proper.

### Conduct of Trial

 Before the trial commenced appellant's counsel requested that any bench conferences be reported. The court advised that because such a procedure was cumbersome, conferences would be off the record and a record would be made at the next recess; also that, if warranted, the jury would be excused and the matter reported. Appellant's counsel objected to this procedure. On appeal it is argued that appellant was denied a fair trial by this practice. Division One of this court strongly disapproved of this practice in *State v. Babineaux*, 22 Ariz.App. 322, 526 P.2d 1277 (1974) and we agree for the reasons set forth in that opinion. However, appellant does not show any prejudice. Absent demonstrable prejudice there is no reversible error. We do observe that appellant's counsel requested a bench conference on almost every matter to which he objected. We strongly disapprove of that practice. Recognized legal objections should be made in open court without argument, the court's ruling should follow. If, at that point, either counsel believes further record is necessary out of the hearing of the jury, the court can grant or deny such request. More often than not the court's ruling on a stated legal objection will be sufficient and no further record will be necessary.

### Consecutive Sentences

 The trial court imposed consecutive sentences for the offenses involving Brenda to commence after those involving Phillip. Appellant contends that the trial court failed to comply with A.R.S. § 13–708 because it did not state reasons for making the sentences consecutive. He argues that if certain remarks of the court were intended as these reasons, they are insufficient. A.R.S. § 13–708 provides that if the court pronounces consecutive sentences, it must set forth on the record the reason for such sentences. In this case the only possible language used which the state contends satisfies the statutory mandate is:

"As you know I have no discretion about putting you on probation. To me the choice, even if I had such a decision, would have to be exercised in favor of sending you to prison. I think you have chosen a life style where you have a distorted definition of freedom when it applies to how you conduct yourself.

I think you seem to feel free to victimize people whenever it suits your purpose. I say that because I want you to understand why I am imposing the sentence which I am imposing."

After saying this the court proceeded to pronounce sentence on each of the five counts. We refuse to speculate that these were the trial court's reasons for the consecutive sentences although they may be sufficient reasons contrary to the argument of appellant. Where we must determine on appeal the sufficiency of given reasons for consecutive sentences it would be much better if the trial court would say something to the effect, "I am imposing consecutive sentences because ... (for example, 'Your crimes were committed against two victims')". We are unable to determine if it was the court's intention that this language constituted an enumeration of the reasons required under the statute and must remand for resentencing.

 Appellant also argues that he should not be given consecutive sentences because of A.R.S. § 13–604(H) and *State v. Mulalley*, 127 Ariz. 92, 618 P.2d 586 (1980). The statute reads:

"Convictions for two or more offenses not committed on the same occasion but consolidated for trial purposes, may, at the discretion of the state, be counted as prior convictions for purposes of this section. Convictions for two or more offenses committed on the same occasion shall be counted as only one conviction for purposes of this section."

Since this question may arise on resentencing, we will consider it. This statute does not, in any way, prohibit consecutive sentences. It pertains only to the use of convictions obtained at the same time as prior convictions for purposes of sentence enhancement.

In *Mulalley* the Arizona Supreme Court was concerned with another statute, A.R.S. § 13–1206, which mandates that a defendant convicted of a dangerous assault while he is in custody shall be sentenced to life imprisonment, and that this sentence shall be consecutive to any other sentence presently being served or imposed on the defendant. Mulalley was convicted of two such assaults committed on the same occasion. The trial judge sentenced him to consecutive life sentences under his interpretation of the statute. The Supreme Court held this was not mandatory relying on A.R.S. § 13–604(H) which the court admitted was "not strictly on point". The opinion does not stand for the proposition that consecutive sentences cannot be given for two crimes committed on the same occasion.

We affirm the convictions, vacate the sentences and remand for resentencing.

HATHAWAY, C. J., and HOWARD, J., concur.