53 P.3d 635

The STATE of Arizona, Appellee,

v.

Bryan Lamar BOOKER, Appellant.

No. 2 CA–CR 2000–0517.

Court of Appeals of Arizona,
Division 2, Department B.

Sept. 12, 2002.

Isabel G. Garcia, Pima County Legal Defender, By Robb P. Holmes, Tucson, for Appellant.

## OPINION

PELANDER, J.

¶ 1 After a second trial, a jury found appellant Bryan Booker guilty of premeditated first-degree murder and drive-by shooting.[1] The trial court sentenced him to concurrent terms of life imprisonment for the murder and 10.5 years for the drive-by shooting. After finding that Booker had committed the offenses while on release pending another felony charge, the trial court also enhanced both sentences by adding two years to each pursuant to A.R.S. § 13–604(R). We affirm Booker's convictions and his underlying, pre-enhancement sentences. But, because we conclude he was constitutionally entitled to have a jury determine his release status for sentence enhancement purposes, we vacate the sentence enhancements and remand the case for further proceedings on that issue.

## BACKGROUND

¶ 2 We view the facts and reasonable inferences therefrom in the light most favorable to sustaining the verdicts. *State v. Nihiser*, 191 Ariz. 199, 201, 953 P.2d 1252, 1254 (App.1997). In 1997, Booker and a passenger drove to a convenience store. While there, Booker had an argument with the victim. Booker returned to the car, reached for something under the seat, then got into the car and shut the door. He backed the car out of the parking space, stopped for approximately fifteen seconds, and slowly drove toward where the victim was standing. As he neared the victim, Booker stopped the car. Five gunshots were fired from the car's passenger window, one of which struck and killed the victim. One witness testified that she had seen Booker fire the shots.

## DISCUSSION

### A. Premeditation Instruction

¶ 3 The state prosecuted Booker under a theory of premeditated first-degree

Janet Napolitano, Arizona Attorney General, By Randall M. Howe and Diane M. Acosta, Tucson, for Appellee.

1. Booker had been convicted of and sentenced for these charges in 1998. This court, however, reversed those convictions and remanded the case for a new trial. *State v. Booker,* No. 2 CA–CR 98–0151 (memorandum decision filed June 22, 1999).

murder. *See* A.R.S. § 13–1105(A)(1). The trial court instructed the jury on first- and second-degree murder and defined premeditation as follows:

> "Premeditation" means that the defendant's intention or knowledge existed before the killing long enough to permit reflection. However, the reflection differs from the intent or knowledge that conduct will cause death. It may be as instantaneous as successive thoughts in the mind, and it may be proven by circumstantial evidence. It is this period of reflection, regardless of its length, which distinguishes first degree murder from intentional or knowing second degree murder. An act is not done with premeditation if it is the instant effect of a sudden quarrel or heat of passion.

*See Revised Arizona Jury Instructions (Criminal)* 11.051 (2000) (RAJI). As he argued below, Booker contends that instruction eliminated the distinction between first- and second-degree murder by defining premeditation as a period long enough to permit reflection, regardless of whether reflection actually occurred, and by stating that the period "may be as instantaneous as successive thoughts in the mind." In particular, he argues that formation of the intent or knowledge that one's conduct will cause death always will be followed by a period of time sufficient for a successive thought. Thus, his argument continues, there is no meaningful distinction between first- and second-degree murder. We review de novo whether a jury instruction correctly stated the law. *State v. Morales,* 198 Ariz. 372, ¶ 4, 10 P.3d 630, ¶ 4 (App.2000).

¶ 4 We first note that the instruction here arguably required actual reflection and, therefore, does not support Booker's contention. Although the instruction referred to premeditation as a period of time sufficient to "permit reflection," it also stated that "*the reflection* differs from the intent or knowledge that conduct will cause death" and that "[i]t is this *period of reflection,* regardless of its length, which distinguishes first degree murder from intentional or knowing second degree murder." (Emphasis added.) *See State v. Ramirez,* 190 Ariz. 65, 72, 945 P.2d 376, 383 (App.1997) (noting that "period of reflection" language supported interpretation of premeditation that required actual reflection), *see also id.* at 73, 945 P.2d at 384 (Ryan, J., dissenting) (language in instruction that required a " 'period of reflection' . . . benefitted Appellant because it required actual reflection"). The prosecutor, however, argued that premeditation is "a period long enough to permit reflection" and that "[i]t's instantaneous." Accordingly, we address the merits of Booker's argument. *See id.* at 67, 72, 945 P.2d at 378, 383 (prosecutor's argument contributed to error arising from ambiguous instruction).

¶ 5 With the exception of felony murder and the intentional or knowing killing of a law enforcement officer acting in the line of duty, § 13–1105(A)(2), (A)(3), premeditation has always been the line of demarcation in Arizona between first- and second-degree murder, at least with respect to a murder committed intentionally or knowingly.[2] *See* Ariz. Penal Code § 173 (1901); Ariz. Rev. Code § 4584 (1928); Ariz.Code Ann. § 43–2902 (1939); former A.R.S. § 13–452 (1956); § 13–1105(A)(1). *See also* A.R.S. § 13–1104(A) (second-degree murder may be committed intentionally, knowingly, or recklessly, but must be "without premeditation"); *State v. Walton,* 133 Ariz. 282, 290, 650 P.2d 1264, 1272 (App.1982) ("[T]he legislature intended

2. We note that the debate about the propriety of using premeditation to distinguish between first- and second-degree murder is not new. In 1928, Supreme Court Justice Benjamin Cardozo proffered an argument similar to that Booker advances. He reasoned that formation of an intent to kill necessarily involves choice and that, if premeditation is " 'a choice made as the result of thought,' " and such thought may occur "with extraordinary celerity," there is little distinction between first- and second-degree murder. Benjamin Nathan Cardozo, *Law and Literature, in*

*Selected Writings of Benjamin Nathan Cardozo* 371, 382–84 (Margaret E. Hall ed., 1947), *quoting Leighton v. People,* 88 N.Y. 117 (1882). Additionally, the Model Penal Code does not distinguish between degrees of murder. Model Penal Code § 210.2, 10A U.L.A. 305 (2001). *See also* comment to Model Penal Code § 210.6, Model Penal Code and Commentaries Pt. II, Vol. 1 at 128 (1980) ("[T]he notion that prior reflection should distinguish capital from non-capital murder is fundamentally unsound.").

that there be two grades of murder with premeditation as the distinguishing factor between first and second degree murder."). The concept of premeditation, however, has evolved.

¶ 6 Before 1978, the legislature had not specifically defined premeditation. Ariz. Penal Code § 173 (1901); Ariz. Rev.Code § 4584 (1928); Ariz.Code Ann. § 43–2902 (1939); former § 13–452 (1956). In the absence of a statutory definition, our supreme court determined that premeditation required thought or reflection. *Moore v. State,* 65 Ariz. 70, 82–83, 174 P.2d 282, 289–90 (1946); *Macias v. State,* 36 Ariz. 140, 149, 283 P. 711, 715 (1929). The court also concluded that such reflection could be "as instantaneous as the consecutive thoughts of the human mind." *State v. Eisenstein,* 72 Ariz. 320, 333, 235 P.2d 1011, 1020 (1951), *overruled on other grounds by State v. Hunter,* 136 Ariz. 45, 50, 664 P.2d 195, 200 (1983). But the court cautioned that jury instructions should not suggest that a homicide could be both premeditated and impulsive. *Moore,* 65 Ariz. at 82, 174 P.2d at 290; *see also State v. Guerra,* 161 Ariz. 289, 294, 778 P.2d 1185, 1190 (1989).

■ ¶ 7 In 1978, the legislature enacted former A.R.S. § 13–1101(1),[3] which stated:

> "Premeditation" means that the defendant acts with either the intention or the knowledge that he will kill another human being, when such intention or knowledge precedes the killing by a length of time to permit reflection. An act is not done with premeditation if it is the instant effect of a sudden quarrel or heat of passion.

1978 Ariz. Sess. Laws, ch. 201, § 125. Our supreme court has not specifically addressed whether that statutory definition reduced premeditation to a period of time in which reflection can, but need not, occur. It has, however, employed definitions of premeditation that support both views. *Compare State v. Murray,* 184 Ariz. 9, 32, 906 P.2d 542, 565

(1995) (defining premeditation as a "length of time permitting reflection"); *State v. Zmich,* 160 Ariz. 108, 111, 770 P.2d 776, 779 (1989) (same); *State v. Rankovich,* 159 Ariz. 116, 122, 765 P.2d 518, 524 (1988) (same); *State v. Hutton,* 143 Ariz. 386, 389, 694 P.2d 216, 219 (1985) (same); *State v. Neal,* 143 Ariz. 93, 97, 692 P.2d 272, 276 (1984) (same), *with State v. Willoughby,* 181 Ariz. 530, 539, 892 P.2d 1319, 1328 (1995) ("Premeditation is established by evidence of a plan to murder formed after deliberation and reflection."); *State v. Vickers (Vickers II),* 159 Ariz. 532, 541, 768 P.2d 1177, 1186 (1989) (same); *State v. Kreps,* 146 Ariz. 446, 449, 706 P.2d 1213, 1216 (1985) (same); *State v. Vickers (Vickers I),* 129 Ariz. 506, 513, 633 P.2d 315, 322 (1981) (same). Despite those apparent discrepancies in our supreme court's post–1978 case law on whether premeditation necessarily requires some reflection, the court consistently has retained the notion that premeditation can occur as quickly as "successive thoughts." *See Zmich; Vickers II; see also State v. Spears,* 184 Ariz. 277, 289, 908 P.2d 1062, 1074 (1996); *State v. Gulbrandson,* 184 Ariz. 46, 65, 906 P.2d 579, 598 (1995); *Kreps,* 146 Ariz. at 449, 706 P.2d at 1216; *Hutton,* 143 Ariz. at 389, 694 P.2d at 219.

¶ 8 In *Ramirez,* Division One of this court concluded that an act cannot be "both impulsive and premeditated" and that "[d]efining premeditation as a length of time (which can be instantaneous as successive thoughts in the mind) obliterates any meaningful distinction between first and second degree murder—other than the penalties." 190 Ariz. at 68, 69, 945 P.2d at 379, 380. To maintain the distinction, the court construed the statutory definition of premeditation to require "actual reflection." *Id.* at 69, 70, 945 P.2d at 380, 381. The court further noted that a jury instruction stating that reflection may occur as quickly as successive thoughts must be balanced by the "instant effect" language of the last sentence in former § 13–1101(1):

---

3. In 1998, the legislature amended A.R.S. § 13–1101(1) by adding the statement, "Proof of actual reflection is not required." 1998 Ariz. Sess. Laws, ch. 289, § 6. That amendment essentially adopted this court's construction of former § 13–1101(1) in *State v. Haley,* 194 Ariz. 123, ¶ 10, 978 P.2d 100, ¶ 10 (App.1998), and "effectively over-

rul[ed]" Division One's contrary construction of that statute in *State v. Ramirez,* 190 Ariz. 65, 945 P.2d 376 (App.1997). *See State v. Thompson,* 201 Ariz. 273, ¶ 14, 34 P.3d 382, ¶ 14 (App.2001). Because the events here occurred in 1997, we address only the former version of § 13–1101(1).

"An act is not done with premeditation if it is the instant effect of a sudden quarrel or heat of passion." *Id.* at 68, 71, 945 P.2d at 379, 382. That language was omitted from the jury instruction in *Ramirez, id.* at 67, 945 P.2d at 378, but was included in the instruction here. *See* ¶ 3, *supra.*

¶ 9 In *State v. Haley,* 194 Ariz. 123, ¶ 10, 978 P.2d 100, ¶ 10 (App.1998), this court concluded that former § 13–1101(1) was unambiguous and, therefore, required no statutory construction. Based on the statute's plain language, we concluded that premeditation does not require actual reflection and expressly disagreed with *Ramirez.*[4] *Haley,* 194 Ariz. 123, ¶ 10, 978 P.2d 100, ¶ 10. We reaffirm that decision here. Because *Haley* did not address whether any distinction remains between the two degrees of murder if the requisite period of time can be as instantaneous as successive thoughts, *see id.* at ¶ 7, we now address that issue.

¶ 10 Division One of this court recently has held that current § 13–1101(1), as amended in 1998 (*see* n. 3, *supra* ), is "void for vagueness" because the statutory definition of premeditation, "as judicially construed, lacks sufficient specificity to provide an adequate standard by which a fact-finder can differentiate the two degrees of murder." *State v. Thompson,* 201 Ariz. 273, ¶ 1, 34 P.3d 382, ¶ 1 (App.2001).[5] In so holding, the court concluded that, "when premeditation is just an instant of time and nothing more, irrebuttable evidence of premeditation will exist in every case of intentional or knowing murder." *Id.* at ¶ 29. According to the court, the common understanding of the phrase "any length of time"[6] in current § 13–1101(1) is inconsistent with our supreme court's established view that premeditation, however defined, may occur as instantane-

ously as successive thoughts of the mind. *Id.* at ¶ 26. And, the court in *Thompson* concluded, including the "instantaneous as successive thoughts" language in a premeditation instruction without any actual reflection requirement would "deprive juries of an ascertainable standard" and create "a standardless vacuum in which determinations of degrees of guilt can only be decided arbitrarily." *Id.* at ¶¶ 30, 32; *see also State v. Cecil,* 201 Ariz. 454, 36 P.3d 1224 (App.2001).

¶ 11 For two reasons, we disagree with *Thompson.* First, if actual reflection may occur as quickly as successive thoughts, as the *Thompson* court implicitly conceded, *id.* at ¶ 30, then that period of time is a fortiori sufficient to permit reflection. Thus, the prior judicial gloss on the concept of premeditation, that it may occur as instantaneously as successive thoughts, is not necessarily inconsistent with the statutory language. Second, and perhaps more importantly, *Thompson* did not address the limiting language of both current and former § 13–1101(1) that a murder is not premeditated "if it is the instant effect of a sudden quarrel or heat of passion." *See also* RAJI 11.051. That language provides a jury an ascertainable standard for determining what does or does not qualify as premeditation.[7] *See Guerra; Moore; Ramirez; see also Cecil,* 201 Ariz. 454, ¶¶ 10, 12, 36 P.3d 1224, ¶¶ 10, 12 (Weisburg, J., concurring). And, it adequately conveys the concept that "an act cannot be both impulsive and premeditated." *Ramirez,* 190 Ariz. at 71, 945 P.2d at 382.

¶ 12 Based on the foregoing, we conclude that premeditation, as statutorily defined, is a period of time sufficient to permit reflection regardless of whether reflection actually occurs. *Haley.* Further, the period of time may be as "instantaneous as successive thoughts." *Vickers II; Eisenstein.*[8] If the

---

4. Our supreme court is aware of this split in authority but has not resolved it. *See State v. Van Adams,* 194 Ariz. 408 n. 4, 984 P.2d 16 n. 4 (1999).

5. Our supreme court granted review in *Thompson* on April 23, 2002 (No. CR 01–0435–PR).

6. The 1998 amendment to § 13–1101(1) changed that phrase from *"a* length of time" to *"any* length of time." (Emphasis added.) 1998 Ariz. Sess. Laws, ch. 289, § 6.

7. We note that the offense of manslaughter includes an act of second-degree murder "upon a sudden quarrel or heat of passion" but which also must "result[ ] from adequate provocation by the victim." A.R.S. § 13–1103(A)(2). *See State v. Bocharski,* 200 Ariz. 50, ¶ 40, 22 P.3d 43, ¶ 40 (2001).

8. Our supreme court has approved the "instantaneous as successive thoughts" language in premeditation jury instructions both before and after 1978. *State v. Guerra,* 161 Ariz. 289, 293–94,

jury is so instructed, however, it must also be instructed that the act may not be impulsive. *Ramirez,* 190 Ariz. at 68–69, 945 P.2d at 379–80. This construction thus recognizes that, although the concept of premeditation has evolved, its core function has not. It still distinguishes between impulsive and nonimpulsive murder. *See* Benjamin Nathan Cardozo, *Law and Literature, in Selected Writings of Benjamin Nathan Cardozo* 371, 384 (Margaret E. Hall ed., 1947) ("What we have is merely a privilege offered to the jury to find the lesser degree when the suddenness of the intent, the vehemence of the passion, seems to call irresistibly for the exercise of mercy."). Because the jury instruction here conformed to these requirements, we find no error.

## B. Accomplice Liability Instruction

¶ 13 Booker next contends the trial court erred by instructing the jury on accomplice liability. We review a trial court's decision to give or refuse a jury instruction for an abuse of discretion. *State v. Bolton,* 182 Ariz. 290, 309, 896 P.2d 830, 849 (1995). In doing so, we view the evidence in the light most favorable to the proponent of the instruction. *Cotterhill v. Bafile,* 177 Ariz. 76, 79, 865 P.2d 120, 123 (App.1993); *see also* Ariz. R.Crim. P. 21.1, 17 A.R.S. ("The law relating to instructions to the jury in civil actions shall apply to criminal actions, except as otherwise provided.").

¶ 14 "A party is entitled to an instruction on any theory reasonably supported by the evidence." *State v. Rodriguez,* 192 Ariz. 58, ¶ 16, 961 P.2d 1006, ¶ 16 (1998). An accomplice is, inter alia, a person "who with the intent to promote or facilitate the commission of an offense ... [p]rovides means or opportunity to another person to commit the offense." A.R.S. § 13–301; *see also* A.R.S. § 13–303(A)(3) (accomplice is accountable for criminal conduct of another).

¶ 15 Even under Booker's theory of defense that his passenger fired the shots, the evidence reasonably supported an accomplice liability instruction. The evidence showed that, before the shooting, Booker had searched for something under his driver's seat and that, after he pulled the car out of its parking space, he had stopped for approximately fifteen seconds before driving toward the victim. The state also presented expert testimony that, based on review of a videotape of the events leading to the shooting, the car had slowed down as it approached the victim. And, an eyewitness testified that Booker had "stopped the car in front of the victim." That evidence and reasonable inferences therefrom permitted the jury to conclude that Booker had intended to promote or facilitate the offenses and had provided the means or opportunity for his passenger to commit the offenses. The trial court did not err in instructing the jury on accomplice liability.

## C. Sufficiency of the Evidence

¶ 16 Booker next contends the trial court erroneously denied his motion for a judgment of acquittal, made pursuant to Rule 20(a), Ariz. R.Crim. P., 17 A.R.S. According to Booker, the state failed to present sufficient evidence that he had acted either as a principal or an accomplice in killing the victim. We review de novo a trial court's decision to deny a motion for judgment of acquittal, viewing the facts and all reasonable inferences therefrom in the light most favorable to sustaining the verdict. *State v. Bible,* 175 Ariz. 549, 595, 858 P.2d 1152, 1198 (1993); *see also State v. Rienhardt,* 190 Ariz. 579, 588–89, 951 P.2d 454, 463–64 (1997).

¶ 17 A trial court should grant a judgment of acquittal only when there is no substantial evidence to warrant a conviction. Ariz. R.Crim. P. 20(a); *see also Rienhardt,* 190 Ariz. at 588, 951 P.2d at 463. Substantial evidence is evidence that a reasonable jury could accept as sufficient to establish guilt beyond a reasonable doubt. *State v. Fulminante,* 193 Ariz. 485, ¶ 24, 975 P.2d 75, ¶ 24

778 P.2d 1185, 1189–90 (1989); *State v. Moore,* 112 Ariz. 271, 273, 540 P.2d 1252, 1254 (1975). The court, however, has not mandated that language and, as the state acknowledges, "has never held that the statutory definition of premedita-

tion must be read to include" such language. In our view, an instruction based strictly on the statutory definition of premeditation would be more precise and less susceptible to confusion and claims of error.

(1999). And, a trial court must submit a case to the jury if reasonable jurors could fairly differ on the inferences to be drawn from the evidence. *State v. Landrigan,* 176 Ariz. 1, 4, 859 P.2d 111, 114 (1993).

¶ 18 To establish premeditated first-degree murder, the state must show that, "[i]ntending or knowing that the person's conduct will cause death, the person causes the death of another with premeditation." § 13–1105(A)(1). "A person commits drive by shooting by intentionally discharging a weapon from a motor vehicle at a person, another occupied motor vehicle or an occupied structure." A.R.S. § 13–1209(A). For either offense, a person may be criminally accountable under a principal or accomplice liability theory. §§ 13–301, 13–303.

¶ 19 A witness testified that she had seen Booker fire the gunshots. That evidence alone was sufficient to support Booker's conviction as a principal. As noted above, there also was ample evidence to support Booker's conviction as an accomplice. The trial court did not err in denying Booker's motion for judgment of acquittal.

### D. Additional Jury Instruction

¶ 20 After deliberations had begun, the jury requested additional instruction on the definition of "criminally accountable" as that term relates to accomplice liability. After consulting with both parties' attorneys, the trial court sent the jury an additional written instruction that stated: " 'Criminally accountable' means that a defendant can be found guilty for the conduct of another person if you find beyond a reasonable doubt that a defendant is an accomplice of the other person." Booker contends the trial court erred by giving that further instruction in his absence.

¶ 21 A trial court has discretion to "give appropriate additional instructions." Ariz. R.Crim. P. 22.3, 17 A.R.S.; *see also State v. Stevens,* 184 Ariz. 411, 413, 909 P.2d 478, 480 (App.1995). If a trial court gives a jury additional instructions, the defendant has a constitutional right to be present. *See Bustamante v. Eyman,* 456 F.2d 269, 273, 274 (9th Cir.1972) (defendant in capital case had unwaivable constitutional right to be present

when tape-recorded instructions replayed for jury); *State v. Sanchez,* 130 Ariz. 295, 299, 635 P.2d 1217, 1221 (App.1981) (defendant had right to be present when testimony re-read to jury); *State v. Perez,* 115 Ariz. 30, 31, 563 P.2d 285, 286 (1977); *see also State v. Mata,* 125 Ariz. 233, 240–41, 609 P.2d 48, 55–56 (1980) ("The general rule in Arizona is that reversible error occurs when a trial judge communicates with jurors after they have retired to deliberate, unless defendant and counsel have been notified and given an opportunity to be present."). But the defendant may waive that right by, inter alia, giving counsel "express authority in a knowing and intelligent manner." *Lee v. State,* 509 P.2d 1088, 1092 (Alaska 1973); *see also Perez,* 115 Ariz. at 31, 563 P.2d at 286.

¶ 22 As the state points out, and the record reflects, Booker's trial counsel informed the court that Booker had instructed him to respond to any jury questions "without him." Booker has not contested that fact in his reply brief. Thus, we conclude that Booker effectively waived his right to be present when the court gave the additional jury instruction.

¶ 23 In a related argument, Booker contends the court's additional instruction placed "undue emphasis" on accomplice liability because it did not re-instruct the jury to consider all of the instructions as a whole. He further claims the additional instruction was incomplete because it did not refer the jury to the mere presence instruction. Although Booker objected generally to the content of the additional instruction, he did not request the further instructions he now claims were necessary. But assuming Booker's objection was sufficient to preserve the issue he now raises, we find no error.

¶ 24 As noted above, we review a trial court's decision to give or refuse a jury instruction for an abuse of discretion. *Bolton,* 182 Ariz. at 309, 896 P.2d at 849. If a trial court gives a jury an additional instruction after deliberations have begun, "[t]he court may also ... give other instructions, so as not to give undue prominence to the particular ... instructions requested." Ariz. R.Crim. P. 22.3. It does not follow, however,

that a trial court must always re-instruct the jury on areas of the law that have been adequately explained by the court's initial instructions. *See State v. Dickey*, 125 Ariz. 163, 170, 608 P.2d 302, 309 (1980).

¶ 25 Because the jury, rather than the parties, requested the additional instruction, we cannot conclude the instruction gave accomplice liability "undue prominence." Ariz. R.Crim. P. 22.3. Rather, any prominence appears to have been the result of the jury's independent deliberative process. That prominence cannot be characterized as undue. Each of the jurors had a complete packet of the jury instructions during deliberations. Moreover, the trial court had twice instructed the jury to consider the instructions, including the mere presence instruction, as a whole. Jurors are presumed to have followed the court's instructions. *State v. Preston*, 197 Ariz. 461, ¶ 14, 4 P.3d 1004, ¶ 14 (App.2000). And, we cannot conclude that giving the additional instruction conveyed to the jury that any of the previous instructions was obsolete. Accordingly, the trial court did not abuse its discretion in its handling of the additional instruction.

### E. Reasonable Doubt Instruction

¶ 26 Booker contends the trial court's reasonable doubt instruction impermissibly shifted the burden of proof and confused the jury. The court gave the instruction mandated in *State v. Portillo*, 182 Ariz. 592, 898 P.2d 970 (1995). Our supreme court has since determined that the *Portillo* instruction does not reduce the state's burden of proof. *State v. Van Adams*, 194 Ariz. 408, ¶¶ 29, 30, 984 P.2d 16, ¶¶ 29, 30 (1999). We cannot overrule, modify, or disregard controlling supreme court precedent. *City of Phoenix v. Leroy's Liquors, Inc.*, 177 Ariz. 375, 378, 868 P.2d 958, 961 (App.1993). We there-fore reject Booker's challenge to the mandated instruction.

### F. Release Status Issues

¶ 27 Although it expressed "grave doubts" as to the constitutionality of A.R.S. § 13–604(P),[9] the trial court found that Booker had committed the offenses while he was on release pending another felony charge. Accordingly, the trial court added two years to each of Booker's sentences pursuant to § 13–604(R).[10] Relying on *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *State v. Gross*, 201 Ariz. 41, 31 P.3d 815 (App.2001), Booker contends he was entitled to a jury trial to determine his release status.

¶ 28 The state does not contend that a judge, rather than the jury, always can make the sentence enhancement finding on release status without violating *Apprendi*'s principles. Rather, relying on a host of federal cases, the state merely argues that Booker's "*Apprendi* challenge is 'categorically barred' because the enhancement under § 13–604(R) did not lead to the imposition of a sentence above the statutory maximum on either count." *See United States v. Austin*, 255 F.3d 593, 597 (8th Cir.2001); *see also United States v. Ellis*, 241 F.3d 1096, 1104 (9th Cir.2001) ("[T]he threshold condition of *Apprendi* [is] that the actual sentence imposed be longer than the maximum sentence for the crime for which a defendant has been validly convicted."); *United States v. Sanchez*, 269 F.3d 1250, 1268 (11th Cir.2001) ("*Apprendi* has *no effect* on cases in which a defendant's actual sentence falls *within the range* prescribed by the statute for the crime of conviction.").

¶ 29 This court recently rejected the state's identical argument by following *Gross* and concluding, in accordance with *Apprendi* and *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct.

---

9. Pursuant to a 1996 amendment, § 13–604(P) permits a trial court to determine a defendant's release status for purposes of sentence enhancement under § 13–604(R). 1996 Ariz. Sess. Laws, ch. 34, § 1. Prior to that time, the trier of fact was statutorily required to make such a finding. 1994 Ariz. Sess. Laws, ch. 236, § 1; *see also State v. Johnson*, 183 Ariz. 358, 903 P.2d 1116 (App.1995).

10. Section 13–604(R) requires a trial court to sentence a defendant "to a term of imprisonment two years longer than would otherwise be imposed for the felony offense" if the defendant committed the offense for which he or she is being sentenced "while the person is released on bail or on the defendant's own recognizance on a separate felony offense."

2428, 153 L.Ed.2d 556 (2002), that "a fact exposing a defendant to increased sentencing, not the actual sentence imposed, is the litmus test" for *Apprendi* purposes. *State v. Benenati*, 52 P.3d 804, 808 (Ariz.Ct.App. 2002); *see also Gross*, 201 Ariz. 41, ¶¶ 12, 14, 31 P.3d 815, ¶¶ 12, 14. We now do so again. Because Booker is constitutionally entitled to have a jury determine his release status for sentence enhancement purposes under § 13–604(R), we vacate the two-year enhancements to his sentences and remand the case for a jury trial on the sentence enhancement, release status issues. *See Benenati* at ¶¶ 22, 27; *Gross*, 201 Ariz. 41, ¶¶ 20, 27, 31 P.3d 815, ¶¶ 20, 27.

¶ 30 Booker further contends § 13–604(R) does not apply to him because, at the time these offenses were committed, he was participating in a deferred prosecution program and, therefore, was not released on bail or his own recognizance. *See* Ariz. R.Crim. P. 7.1 through 7.5, 16A A.R.S. (governing release). Whether participation in a deferred prosecution program affects release status is an issue of law that we review de novo. *See State v. Bonds*, 201 Ariz. 203, ¶ 5, 33 P.3d 537, ¶ 5 (App.2001).

¶ 31 Rules 38.1 through 38.3, Ariz. R.Crim. P., 17 A.R.S., govern the suspension of a prosecution to permit a defendant to participate in a deferred prosecution program. The rules do not directly address a defendant's release status upon suspension of the prosecution. *See* Ariz. R.Crim. P. 38.1. Rule 38.1(c), however, provides that, "[i]f the defendant is in custody, the court may order him or her released." The only rule providing a mechanism for such a pretrial release is Rule 7.2, Ariz. R.Crim. P., which provides for release on bail or on a defendant's own recognizance. Read together, Rules 7.2 and 38.1(c) establish that a defendant participating in a deferred prosecution program is "on release" for purposes of § 13–604(R).

¶ 32 Moreover, we note that Rule 38.2, which governs resumption of a deferred prosecution, does not provide a mechanism for a trial court to redetermine a defendant's release status. The absence of such a procedure in that rule further establishes that a defendant who participates in a deferred prosecution program remains on release status, rather than having had that status terminated.[11]

¶ 33 We also reject Booker's argument that "[h]e could not have been on release" because "[n]o court action was pending." "[A]n action ... is 'pending' from its inception until the rendition of final judgment." *Black's Law Dictionary* 1134 (6th ed.1990) (defining "Pending"). Although Booker participated in the deferred prosecution program, there had been no conviction, acquittal, or dismissal of the prosecution. Thus, the action was still pending.

¶ 34 Likewise, that Booker was "under no bond requirement" does not negate the fact that he was on release during his participation in the deferred prosecution program. Booker had been released on his own recognizance, and, therefore, did not need to post a bond. *See* Ariz. R.Crim. P. 7.1(a). Moreover, a trial court may exonerate an appearance bond before a defendant violates his or her conditions of release upon a finding that the bond is no longer necessary. Ariz. R.Crim. P. 7.6(e). Thus, the absence of a bond requirement does not establish that a defendant is not on release.

¶ 35 Booker also contends the state breached the plea agreement in the case that gave rise to his release status by using that status to enhance his sentences in this case. Specifically, he argues that, by agreeing not to use his conviction in that case to enhance his sentences here, the state agreed not to use his release status to enhance those convictions. Essentially, this issue involves the interpretation of a contract, which we review de novo. *See Coy v. Fields*, 200 Ariz. 442, ¶ 9, 27 P.3d 799, ¶ 9 (App.2001) ("Plea agreements are contractual in nature and subject to contract interpretation.").

¶ 36 In interpreting a plea agreement, we look to its terms and provisions as written. *State v. Taylor*, 158 Ariz. 561, 564,

---

11. Under Rule 7.4(a), Ariz. R.Crim. P., 16A A.R.S., a trial court must determine a defendant's conditions of release at his or her initial appearance. Thereafter, the court may review and modify those conditions. Ariz. R.Crim. P. 7.4(b) and 7.5.

764 P.2d 46, 49 (App.1988). If those terms and provisions are clear and unambiguous, they are conclusive. *Id.* " '[A]ny dispute over the terms of the [plea] agreement will be determined by objective standards." ' *Id., quoting United States v. Sutton,* 794 F.2d 1415, 1423 (9th Cir.1986).

¶ 37 Although the record does not contain the plea agreement, it is undisputed that the agreement provided that the "conviction [in the prior case] will not be used to enhance the sentencing range in [this case]." Viewed objectively, the term "conviction" is qualitatively different from a defendant's release status. As the state correctly points out, release status may be used to enhance a sentence even in the absence of a conviction for the offense from which the defendant was on release. *State v. Cramer,* 192 Ariz. 150, ¶ 15, 962 P.2d 224, ¶ 15 (App.1998). Thus, Booker has not established that use of his release status to enhance his sentences constituted a breach of the plea agreement.

¶ 38 Finally, we find unpersuasive Booker's argument that "conviction" must include release status because he was charged with first-degree murder, the sentence for which

cannot be enhanced by a prior conviction. *See* A.R.S. § 13–703. That argument ignores the fact that Booker also was charged with and convicted of drive-by shooting, the sentence for which can be enhanced by a prior conviction. *See* § 13–604(B); *see also* § 13–1209(D) ("Drive by shooting is a class 2 felony."). Thus, the state's agreement not to use the prior conviction was not "disingenuous," as Booker contends.

## DISPOSITION

¶ 39 Booker's convictions and sentences, except for the two-year sentence enhancements made pursuant to § 13–604(R), are affirmed. We vacate those sentence enhancements and remand the case for further proceedings on the release status issue.

FLÓREZ and HOWARD, JJ., concurring.